**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 25-cv-25500-KMW**

LISE GILBERT,
a citizen and resident of Canada,

Plaintiff,

v.

CELEBRITY CRUISES, INC., a
Liberian Corporation,

Defendant.
_________________________________/

**DEFENDANT'S MOTION TO DISMISS**

Defendant, CELEBRITY CRUISES, INC., ("Celebrity"), by and through undersigned counsel moves to dismiss Plaintiff's Complaint [Docket Entry Number ("DE") 1] based on the doctrine of *forum non conveniens* pursuant to a forum selection clause in the applicable Cruise Ticket Contract ("Ticket Contract") accepted by Plaintiff prior to the sailing, and in support states as follows:

**Introduction**

Lise Gilbert ("Plaintiff") brings this claim for negligence against Celebrity for injuries she allegedly sustained on or about November 27, 2024, while aboard a cruise in navigable waters (Southern Caribbean) onboard the *Celebrity Eclipse*. Plaintiff's Complaint ("Complaint" or "Compl."), DE 1, at ¶¶4,10-13. Prior to the cruise, on October 11, 2024, Plaintiff, through her authorized representative, completed the online check-in process for her cruise onboard the *Celebrity Eclipse*, and clicked a check box affirmatively accepting the Cruise Ticket Contract applicable to her sailing.

Plaintiff's claims against Celebrity should be dismissed *with prejudice* because the Ticket Contract between Plaintiff and Celebrity contains a forum selection clause that requires all suits for personal injuries arising out of the subject cruise to be litigated, if at all, in and before the Courts of England and Wales. Federal courts, including the U.S. Supreme Court, the Eleventh Circuit, and courts in this District, have consistently held that contractual forum-selection clauses in maritime cases are presumptively valid and enforceable, and have dismissed actions filed outside the parties' pre-selected jurisdiction. These cases are dispositive and compel dismissal of the instant action.

Where, as here, a mandatory forum-selection clause applies, the Court presumes the clause valid and enforceable under *Bremen* and *Shute* and, absent a strong showing to the contrary, applies the modified *forum non conveniens* analysis articulated by the U.S. Supreme Court in *Atlantic Marine*. Under that framework, the District Court must determine (1) whether an adequate and available alternative forum exists, and (2) whether extraordinary public-interest factors disfavor enforcement. Private-interest factors are deemed to favor the selected forum, and the plaintiff's choice of forum carries no weight. Accordingly, dismissal is required unless Plaintiff can demonstrate that England and Wales is inadequate or that extraordinary public-interest considerations justify disregarding the parties' contractual choice of forum, which she cannot.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## Relevant Factual Background Supporting Dismissal

**A. Canadian Passenger Cruise Ticket Contract**

Plaintiff is a Canadian national domiciled in Canada. Declaration of Karen Blanchette ("Blanchette Dec.), attached as Exhibit "1" at ¶24.

The C*elebrity Eclipse* is a Malta flagged passenger cruise ship (IMO 9404314) owned by a Liberian company (Celebrity Eclipse, Inc.) and operated and managed by Celebrity, a subsidiary of RCG, also a Liberian company, with a principal office in Florida, and a subsidiary office in England and Wales, United Kingdom ("U.K."). *Id.* at ¶4.

Celebrity requires a valid signed contract (including affirmative electronic acceptance) before any passenger can board a ship. *Id.* at ¶41. As of April 12, 2023, all guests sailing on Celebrity vessels are bound by a version of a ticket contract that is dictated by their Primary Country of Residence. *Id.* at ¶15.

Celebrity maintains a "Guest Terms and Conditions" microsite that houses the various versions of the ticket contract (otherwise known as "Booking Conditions" in certain global markets) based on the Primary Country of Residence, as well as other terms and conditions and policies relevant to cruise sailings. The site URL is: https://www.celebritycruises.com/guest-terms. *Id.* at ¶16.

Guests are prompted at multiple points in the booking and pre-boarding process to visit the site and view the terms and conditions applicable to their cruise sailing based on their Primary Country of Residence. *Id.* at ¶17.

A specific cruise ticket contract for Canada exists on the site and applies to guests whose Primary Country of Residence is Canada. *Id.* at ¶18. The version of the Canada Cruise Ticket Contract affirmatively accepted and agreed to by Plaintiff is attached hereto as Exhibit "1-A."

**B. The Subject Booking**

The subject sailing was originally booked through the travel agency Le Voyagiste de Québec ("Travel Agent"), acting through its authorized personnel, under the reservation ID number 1710284, on or about March 17, 2024. *Id.* at ¶23. Plaintiff, Lise Gilbert Picard, and Gaston Picard (upon information and belief, her husband), were both named as guests under the booking for a cruise aboard the *Celebrity Eclipse* departing on November 25, 2024. *Id.*

On March 17, 2024, a Booking Confirmation was sent to Plaintiff's Travel Agent, which contained a capitalized "IMPORTANT NOTICE TO GUESTS", immediately below the trip


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

itinerary, instructing the Plaintiff that her cruise ship ticket was dictated by her "Primary Country of Residence", and providing a clickable link directing her to review her Ticket Contract. *Id.* at ¶¶25,26,27; Exhibit"1-B".

On April 19, 2024 and August 6, 2024 additional Booking Confirmation Invoices were sent via email to Plaintiff's Travel Agent. *Id.* at ¶28; Exhibit "1-C." These Booking Confirmation Invoices again indicated each was a document from Celebrity, contained the same **bolded** "**IMPORTANT NOTICE TO GUESTS**" and directed Plaintiff to the terms and conditions that applied to her cruise as set forth in the Ticket Contract. *Id.*

**C. Plaintiff Agreed to be Bound by the Canada Ticket Contract**

Plaintiff's Complaint makes reference to the "operative ticket contract" but incorrectly states that "any lawsuit against it arising out of injuries or events occurring on the cruise voyage in this federal judicial district." DE 1, ¶7. As outlined *infra*, the Plaintiff was bound by the terms and conditions of the Ticket Contract along with its mandatory England and Wales forum clause for Canadian residents.

On October 11, 2024, at 10:35:53 AM, Plaintiff, through her Travel Agent, completed the online check-in for the subject cruise on the Web. *Id.* at ¶29. The online check-in process for guests can be completed by their travel agent managing their booking. *Id.* When the process is completed by a travel agent, it is undertaken in the name of each guest and pursuant to the guest's authorization. *Id.* Each guest's check-in is processed under the guest's own name and unique passenger identification number, and the Ticket Contract is accepted on that guest's behalf, pursuant to the guest's express legal authorization, as part of the check-in process. *Id.*

During that process, on October 11, 2024, Plaintiff, through her Travel Agent, selected "Canada" as the Primary Country of Residence and affirmatively checked the box accepting the Ticket Contract which stated, "I, [Plaintiff], have read, understand, and accept the cruise ticket contract terms and the health acknowledgement. I affirm that (a) each guest whom I am checking in has also read, understands and accepts the applicable cruise ticket terms and the health acknowledgement and (b) I am legally authorized to accept the cruise ticket contract terms and health acknowledgement on behalf of each guest I am checking in." *Id.* at ¶30. A screenshot of the representative step in the online check-in process required to be completed by Plaintiff, or her Travel Agent, is pictured in Exhibit "1", Blanchette Dec. at ¶30.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Clicking on the URL link, in the "Legal notice" section, following the statement "To find the applicable cruise ticket contract or booking conditions, and the purchase terms and conditions, please visit: https://www.celebritycruises.com/guest-terms" in the screen shot above brings the user to the Celebrity "Guest Terms and Conditions" webpage. *Id.* at ¶31. As a condition of completing online check-in, the Ticket Contract terms and conditions *must* be accepted, whether directly by the passenger or by an authorized third party travel agent acting on the passenger's behalf. *Id.* at ¶32.

Additionally, as soon as the online check-in process was completed, Plaintiff was transmitted a "Prepare for Your Boarding Day" email to the email address lisegilbert117@gmail.com, starting with "YOUR UPCOMING SAIL" and containing the **bolded** "**IMPORTANT NOTICE TO GUESTS**", at the bottom of the email, stating:

> **IMPORTANT NOTICE TO GUESTS: Your cruise ticket contract or booking conditions, and the terms and conditions for the purchase of any products, services, shore excursions or other activities related to your cruise, contain important limitations on the rights of passengers, including provisions relating to limitation of liability, forum selection, governing law, and the use of alternative dispute resolution to resolve certain types of disputes. The applicable cruise ticket contract or booking conditions is determined by your Primary Country of Residence. "Primary Country of Residence" means the country where you primarily reside at the time of booking the cruise. This should be indicated by you, your agent, or other representative at the time of booking the cruise or at online check-in. To find the applicable cruise ticket contract or booking conditions, and the purchase terms and conditions, please visit www.celebritycruises.com/guest-terms.**
>
> **©2024 Celebrity Cruises Inc. Ships' registry: Malta.**
>
> (no emphasis added).

*Id.* at ¶33; Exhibit "1-E".

Clicking the link provided in the email (*see* Ex. "1-E") redirected to the following site URL: www.celebritycruises.com/guest-terms, which clearly displays a clickable link under "YOUR CRUISE PURCHASE" guiding passengers to review their Cruise Ticket Contract. *Id.* at ¶34. This is the same clickable link provided in the three (3) Booking Confirmations discussed *supra*. *Id.*

**D. Plaintiff's Ticket Contract**


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

On October 26, 2024, at 3:34 AM, via an automated system, Plaintiff's Travel Agent received an email at stephanie@levoyagistedequebec.com with subject heading "Your Guest Vacation Documents are now ready for Group ID: 7273438 and Reservation ID: 1710284 Gilbert Picard - EC 25 Nov 2024" containing the Guest Ticket Booklet as an attachment. *Id.* at ¶35; Exhibit "1-F." The email states in relevant part:

> Dear LISE GILBERT PICARD,
>
> Thanks again for choosing Celebrity Cruises. Your electronic cruise documents for Reservation Number 1710284 are now ready at the link below. You will need to enter your reservation number, last name, ship and sail date to access your documents. Please print and carry these documents with you during the boarding process as well as your required forms of citizenship and identification (i.e: a valid Passport or other Department of Homeland Security approved documents).
>
> ONLINE CHECK-IN
>
> To expedite the boarding process, please ensure that you have completed your online check-in no less than 4 days prior to your sailing. There you will be asked to complete your immigration and embarkation forms, accept the Cruise Ticket Contract, and set up your onboard expense account. Also, please print your Xpress Pass which will be collected during ship check-in formalities. For your convenience, a link to online check-in is shown below.
>
> http://www.celebritycruises.com/onlinecheckin

*Id.*; Ex. "1-F."

Clicking the link provided in the email allowed Plaintiff to access an electronic version of her Guest Ticket Booklet through her guest portal. *Id.* at ¶36. Nevertheless, the Guest Ticket Booklet was also provided as an attachment to the email. Ex. "1-F."

The first page of the Guest Ticket Booklet (and the subsequent pages) indicates that this was a document from Celebrity. *Id.* at ¶37. On the first page of the Guest Ticket Booklet, Plaintiff was directed to the terms and conditions that applied to her cruise as set forth in the Ticket Contract, accordingly:

> **IMPORTANT NOTICE TO GUESTS:**
>
> Your cruise ticket contract or booking conditions, and the terms and conditions for the purchase of any products, services, shore excursions, or other activities related to the cruise sailing, contain important limitations on the rights of passengers, including provisions relating to limitation of liability, forum selection, governing law, and the use of alternative dispute resolution to resolve certain types of disputes.

> The applicable cruise ticket contract or booking conditions and the purchase terms and conditions is determined by your Primary Country of Residence. 'Primary Country of Residence' means the country where you primarily reside at the time of booking the cruise. This should be indicated by you, your agent, or other representative at the time of booking the cruise.
>
> To find the applicable cruise ticket contract or booking conditions, and the purchase terms and conditions, please visit www.celebritycruises.com/guest-terms.

*Id.*; Ex. "1-F."

At the top of the first page of the Ticket Contract accepted by Plaintiff, in **bold**, capitalized red letters, the following language appears:

> **IMPORTANT NOTICE TO GUESTS**
>
> **THIS CRUISE/CRUISETOUR TICKET CONTRACT IS APPLICABLE ONLY TO GUESTS WHOSE PRIMARY COUNTRY OF RESIDENCE IS CANADA. IF YOUR PRIMARY COUNTRY OF RESIDENCE IS NOT CANADA, THEN PLEASE VISIT https://www.CelebrityCruises.com/guest-terms/ TO DETERMINE THE CRUISE/CRUISETOUR TICKET CONTRACT OR BOOKING TERMS AND CONDITIONS THAT APPLY TO YOU. PLEASE REFER TO SECTION 2.i BELOW FOR THE DEFINITION OF "PRIMARY COUNTRY OF RESIDENCE."**
>
> **THIS CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS TICKET CONTRACT. YOU EXPRESSLY AGREE TO THE TERMS HEREIN, AND AGREE AND UNDERSTAND THAT YOU ARE BOUND BY THE PROVISIONS OF THIS AGREEMENT FROM THE TIME OF BOOKING AND AFTER THE CRUISE TERMINATES. YOU AGREE THAT CARRIER MAY CHANGE, MODIFY, AND UPDATE THE TERMS OF THIS TICKET CONTRACT, THAT NOTICE OF SUCH CHANGE MAY OR MAY NOT BE GIVEN, AND THAT YOU NONETHELESS AGREE TO BE BOUND BY ANY SUCH CHANGE OR MODIFICATION.**
>
> **YOU ARE ESPECIALLY DIRECTED TO CAREFULLY READ AND UNDERSTAND SECTIONS 3, AND 10 THROUGH 12, AS THEY CONTAIN SIGNIFICANT LIMITATIONS ON YOUR RIGHTS TO ASSERT CLAIMS FOR PERSONAL INJURIES, ILLNESS OR DEATH, AND BAGGAGE AND PERSONAL PROPERTY LOSS OR DAMAGE, AGAINST CARRIER, THE VESSEL, RELATED ENTITIES AND**



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

**THEIR OFFICERS, AGENTS AND EMPLOYEES AND OTHER THIRD PARTIES, INCLUDING TIME LIMITS AND FORUM FOR CLAIMS AND SUITS, APPLICABLE LAW, ARBITRATION, AND IN REM PROCEEDINGS.**

**GUESTS SAILING TO THE GALAPAGOS ISLANDS SHOULD REFER TO SECTIONS 5.b AND 13.e FOR NOTICES SPECIFIC TO GALAPAGOS CRUISES.**

**IF YOU ARE THE PERSON MAKING A BOOKING YOU ARE ALSO DIRECTED TO CAREFULLY READ AND UNDERSTAND SECTION 16.a TO UNDERSTAND YOUR RESPONSIBILITIES AS THE LEAD GUEST.**

*Id.* at ¶38; Ex. "1-A".

Paragraph 10 of the Ticket Contract titled "FORUM SELECTION; GOVERNING LAW; TIME LIMITS TO BRING SUIT; ARBITRATION," contains the following provisions:

a. **FORUM SELECTION & GOVERNING LAW:**

(i.) EXCEPT AS PROVIDED IN SECTION 10.c. BELOW, ALL DISPUTES, CLAIMS OR OTHER MATTER OF ANY DESCRIPTION ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY RELATED OR INCIDENT TO THIS AGREEMENT, THE CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT (INCLUDING A CLAIM FOR PERSONAL INJURY, ILLNESS OR DEATH OF A GUEST) MUST BE LITIGATED, IF AT ALL, IN AND BEFORE THE COURTS OF ENGLAND AND WALES, TO THE EXCLUSION OF ALL OTHER COURTS OR TRIBUNALS. GUEST HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT GUEST MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE COURTS OF ENGLAND AND WALES.

(ii.) THIS AGREEMENT AND ALL DISPUTES OR CLAIMS WHATSOEVER BY GUEST ARISING FROM OR RELATED TO THIS AGREEMENT SHALL IN ALL RESPECTS, AND WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW. FOR THE AVOIDANCE OF DOUBT, THIS SECTION 10.a.ii APPLIES TO ALL DISPUTES AND CLAIMS WHETHER RESOLVED IN COURT OR IN ARBITRATION. EXCEPT AS OTHERWISE EXPRESSLY SPECIFIED IN THIS AGREEMENT, GUEST AGREES THIS CHOICE OF LAW SUPERSEDES AND PREEMPTS ANY PROVISION OF LAW OF ANY OTHER COUNTRY, STATE, OR TERRITORY.

**b. TIME LIMITS TO PROVIDE NOTICE AND FILE A CLAIM:**



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

> **(i) FOR PERSONAL INJURY/ILLNESS/DEATH CLAIMS:** NO SUIT SHALL BE MAINTAINABLE AGAINST THE CARRIER, THE VESSEL OR THE TRANSPORT FOR PERSONAL INJURY, ILLNESS OR DEATH OF ANY GUEST UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, IS DELIVERED TO CARRIER AT THE FOLLOWING ADDRESS, C/O RCL CRUISES LTD., BUILDING 7, THE HEIGHTS, BROOKLANDS, WEYBRIDGE, SURREY, ENGLAND, KT13 0XW OR VIA EMAIL TO claims.intl@rccl.com, WITHIN SIX (6) MONTHS FROM THE DATE OF THE INJURY, ILLNESS OR DEATH AND SUIT IS COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DATE OF SUCH INJURY, ILLNESS OR DEATH AND PROCESS SERVED WITHIN 120 DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE, TERRITORY OR COUNTRY TO THE CONTRARY.

*Id.* at ¶39; Exhibit "1-A".

**E. Additional Communications to Plaintiff**

On both November 15, 2024 and November 22, 2024, Plaintiff was transmitted additional "Prepare for Your Boarding Day" emails to the email address lisegilbert117@gmail.com, starting with "YOUR UPCOMING SAIL" and containing the **bolded** "**IMPORTANT NOTICE TO GUESTS**", at the bottom of the emails, providing a URL link to the webpage where the Ticket Contract could be read and reviewed in detail. *Id.* at ¶40; Exhibit "1-G."

## MEMORANDUM OF LAW

### I. Legal Standard

"[A] motion to dismiss for *forum non conveniens* is the appropriate means to enforce, in federal litigation, a valid forum-selection clause calling for litigation of disputes in a non-federal forum." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 559 (11th Cir. 2016). In ruling on the enforceability of a forum selection clause under *forum non conveniens,* the Court may consider facts outside of the complaint. *Prakash Nayak v. Star Clippers, Ltd. Corp.*, No. 12-23768-CIV, 2014 U.S. Dist. LEXIS 50564, at *9 (S.D. Fla. Mar. 11, 2014).

Forum selection clauses are presumptively valid, and the burden of proving their unreasonableness is a heavy one. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). Although the Court takes the facts of the complaint as true, it does so "only to the extent they are uncontroverted by defendant's affidavits." *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012). Where there is a forum selection clause, a court must apply the modified *forum non conveniens* analysis as set forth by the Supreme Court in *Atl. Marine Constr.*


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

*Co. v. United States Dist. Court,* 571 U.S. 49 (2013), where the plaintiff's choice of forum bears no weight, the court must deem the private interest factors to weigh entirely in favor of the selected forum, and the court may only consider the public factors. *Prakash*, *supra* at *10.[1]

## II. The Ticket Contract is Governed by Federal Maritime Law

The substantive law governing suits involving passengers against cruise lines is the general maritime law of the United States, the rules of which have been developed by the federal courts. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628 (1959); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1985).

Consistent with this settled principle, it is also well-settled that federal maritime law governs the enforceability of a forum selection clause in a passenger ticket contract. *See Shute,* 499 U.S. at 585 (enforceability of forum selection clause in cruise ticket presented a case in admiralty is governed by federal law). Here, according to the allegations of Plaintiff's Complaint, she was injured while aboard the *Celebrity Eclipse* while the vessel was in navigable waters. Compl. at ¶¶4,10-13. Accordingly, federal maritime law applies, and the validity of a provision contained in a passenger ticket contract is to be interpreted by the general maritime law of the United States which mandates that it be presumptively valid.

## III. Plaintiff's Claims Should Be Dismissed Pursuant to the Forum Selection Clause in Her Passenger Ticket Contract.

### A. The Forum Selection Clause is Valid and Enforceable

Courts broadly recognize that forum-selection clauses are presumptively valid and enforceable. The Supreme Court's determination that a valid forum-selection clause should be given controlling weight in all but the most exceptional cases, stems, in part, from the recognition that these clauses represent the parties' *ab initio* agreement as to the most proper forum. *Atl. Marine,* 571 U.S. at 62 & 64 (2013) ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."); *M/S Bremen v. Zapata Off-Shore Co.*, 407

---

[1] When presented with a valid forum-selection clause, "District courts must apply the Supreme Court's modified *forum non conveniens* analysis because a valid forum-selection clause has been presented—assessing (1) whether an adequate alternative forum is available, and (2) whether the public factors weigh in favor of dismissal." *Gonzalez v. Celebrity Cruise Lines Inc.*, No. 22-cv-24247, 2023 U.S. Dist. LEXIS 130636, at *20 (S.D. Fla. July 27, 2023) (citing *Atl. Marine.*, 571 U.S. at 63-65).


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

U.S. 1, 16-17 (1972) ("*The Bremen*"); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31-33 (1988) (Kennedy, J., concurring).

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the United States Supreme Court unequivocally held that cruise line passengers are bound by forum selection provisions contained in their cruise ticket contracts. In *Shute*, a Washington couple purchased a passenger ticket contract from the defendant cruise line, which contained a forum selection clause designating Florida as the exclusive venue for litigation. *Id.* at 587. While on the cruise, the plaintiff slipped and fell, injuring herself. *Id.* at 588. The plaintiff filed suit in a Washington federal district court instead of Florida, and the defendant cruise line moved for summary judgment, contending that the forum selection clause in the passenger ticket contract required the plaintiff to file suit in Florida. *Id.* The district court granted the defendant's Motion for Summary Judgment and dismissed the action. *Id.* Agreeing with the district court, the Supreme Court explained:

> First, a cruise line has a special interest in limiting the forum in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum, and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

*Id*. at 593-594 (citations omitted); *see also The Bremen*, 407 U.S. at 10 (forum selection clauses are "prima facie valid and should be enforced").

Since *Shute* was decided, federal courts have consistently enforced forum selection clauses in cruise line ticket contracts even when they require claims to be resolved outside the United States. *Seung v. Regent Seven Seas Cruises, Inc.*, 393 Fed. Appx. 647, 649 (11th Cir. 2010) (dismissal to France); *Effron v. Sun Line Cruises, Inc.*, 61 F.3d 7 (2d Cir. 1995) (dismissal to Greece); *Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905 (dismissal to Italy); *Heinz v. Grand Circle Travel*, 2004 A.M.C. 2020 (W.D. Ky. 2004) (dismissal to Switzerland); *cf. Krenkel*, 579 F.3d at 1281 (dismissal to The Bahamas under resort contract). For instance, in *Seung*, 393 Fed. Appx. at 650,


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

the Eleventh Circuit enforced a forum selection clause that required a cruise ship passenger from California to file the lawsuit in Paris, France (for a cruise in French Polynesia); *see also Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341, 1347-48 (11th Cir. 2021)(the court enforced a forum selection clause calling for Italy as the forum, despite the Plaintiff being from the United States and the Defendant being based in Pembroke Pines, Florida, some of the alleged tortious conduct occurring in Florida, and the cruise having departed from Ft. Lauderdale, Florida).

As the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63-65 (2013). Second, in this analysis, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, the analysis must only consider public interest factors. *Id.* "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

"As the United States Supreme Court has noted, the existence of a forum-selection clause is essentially case dispositive in the *forum non conveniens* analysis." *McCoy v. Sandals Resorts, Ltd.*, 2019 U.S. Dist. LEXIS 199922, at *12 (S.D. Fla. Nov. 18, 2019) (citing *Atl. Marine*, 571 U.S. at 62; *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis)). Once established, the existence of a valid forum-selection clause governing the claims at issue shifts the burden from the party seeking dismissal to the non-movant to establish that dismissal is improper. *See Atl. Marine*, 571 U.S. at 63. Indeed, the party seeking to avoid the forum-selection clause bears a "heavy burden of proof" in establishing that the clause should be set aside. *Shute*, 499 U.S. at 595.

Plaintiff here cannot meet that burden. Accordingly, under the clear and controlling case law, Plaintiff has sued in the wrong forum and the England and Wales forum selection clause for claims relating to this lawsuit, contained within the Ticket Contract accepted by Plaintiff, should be enforced.

**B. A Forum Selection Clause Incorporated into a Passenger Contract is Valid Where it is Reasonably Communicated**

**1. The Terms of the Ticket Contract were Reasonably Communicated to Plaintiff**

In order for contractual provisions such as the forum selection clause to be binding, the cruise line ticket contract incorporating such terms need only "reasonably communicate" its


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

provisions to passengers. *Milanovich v. Costa Crociere, S.P.A.*, 954 F.2d 763, 768 (D.C. Cir. 1992); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335 (11th Cir. 1984) ("[C]onditions or limitations in a contract for passage are valid if the ticket provides adequate notice of them."); *Williams*, 2021 U.S. Dist. LEXIS 238752, *12 ("Generally, Courts will enforce such a limitation if the cruise ticket provided the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract.") (internal citations omitted). Whether provisions of a passage contract are "reasonably communicated" is a question of law to be determined by the court. *Angel v. Royal Caribbean Cruise Lines, Ltd.*, 2002 U.S. Dist. LEXIS 22440, *9 (S.D. Fla. 2002).

Here, Plaintiff was provided with and directed to the terms and conditions of the Ticket Contract. *See* Ex. "1-A." At the top of the first page of the Ticket Contract, **bold**, red, capitalized letters direct passengers to the clause containing the limitation provisions. Ex. "1-A"; *see* Ex. "1", Blanchette Dec. at ¶38. Paragraph 10 titled "FORUM SELECTION; GOVERNING LAW; TIME LIMITS TO BRING SUIT; ARBITRATION" explicitly advised Plaintiff that her claims are subject to the exclusive jurisdiction of the Court of England and Wales. Ex. "1-A"; *see* Ex. "1", Blanchette Dec. at ¶39. In this case, not only were the terms of the Ticket Contract reasonably communicated to Plaintiff, but during the check-in process, Plaintiff, through her Travel Agent affirmatively clicked on a box accepting the Ticket Contract. *See* Ex. "1", Blanchette Dec. at ¶30.

**2. Plaintiff was on Notice of the Terms of the Ticket Contract**

Here, Plaintiff accepted the Ticket Contract when the box was clicked affirming her acceptance of it during the check-in process. Additionally, Plaintiff was prompted at multiple points in the booking and pre-boarding process to visit the site and view the terms and conditions applicable to her cruise sailing based on her Primary Country of Residence. Indeed, Plaintiff was notified of the Ticket Contract before the cruise in the following ways:

- Booking Confirmation Invoices directing Plaintiff to the Ticket Contract, expressly referencing the "forum selection, governing law" provisions, and providing a link to view same were delivered to Plaintiff's Travel Agent on three separate occasions – March 17, 2024, April 19, 2024, August 6, 2024. *See* Ex. "1", Blanchette Dec. at ¶¶25, 28; Exs. "1-B", "1-C".

- During the online check-in process on October 11, 2024, Plaintiff was provided with a link to the Ticket Contract and was required to affirmatively check the box accepting the Ticket Contract. *See* Ex. "1", Blanchette Dec. at ¶¶29-32; Ex. "1-D."


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

- Immediately following completion of the online check-in process, an email was transmitted directly to Plaintiff again directing her to the Ticket Contract, expressly referencing the "forum selection, governing law" provisions, and providing a link to view same. *See* Ex. "1", Blanchette Dec. at ¶¶33,34; Ex. "1-E".

- An email before the cruise with the Guest Ticket Booklet attached, was sent to Plaintiff's Travel Agent on October 26, 2024. *See* Ex. "1", Blanchette Dec. at ¶35-37; Ex. "1-F." The first page of the Guest Ticket Booklet further directed Plaintiff to the terms and conditions that applied to his cruise as set forth in the Ticket Contract, including specifically the forum selection clause, and provided a link to access same. Ex. "1-F."

- In the days leading up to her boarding, on November 15, 2024 and November 22, 2024, emails were transmitted directly to Plaintiff further directing her to the Ticket Contract, expressly referencing the "forum selection, governing law" provisions, and providing a link to view same. *See* Ex. "1", Blanchette Dec. at ¶40; Ex. "1-G."

Here, there is no doubt that Plaintiff was directed to and received on numerous occasions the link to the Ticket Contract, and accepted same during on-line check-in. This is more than sufficient for the Ticket Contract to govern. *See Estate of Myhra,* 695 F.3d at 1246 (finding that plaintiffs had the ability to become meaningfully informed of the forum-selection clause and reject its terms because they received a travel packet notifying them of the ticket contract and where it could be found, and also "[o]n five separate occasions, invoices were sent to the Myhras containing a notice about the binding terms and conditions and directing the Myhras to where those terms and conditions could be found."); *Lebedinsky v. MSC Cruises, S.A.,* 789 F. App'x 196, 200 (11th Cir. 2019)(finding plaintiff had the time and opportunity to become meaningfully informed of the forum-selection clause where "[b]oth Lebedinsky and her travel agent were given the Booking Confirmation with a notice regarding the Booking Terms and Conditions, which contained a link to MSC Cruises' website, where the terms and conditions, including the forum-selection clause, could be found.").

Indeed, courts have found passengers to be bound by the terms of ticket contracts even when the contract was received and accepted by a travel agent or travelling companion and not the passenger herself. *See Lemoine v. Carnival Cruise Lines*, 854 F. Supp. 447, 448 (E.D. La. 1994) ("It is well established that a passenger has accepted a ticket and received notice of its content even though a travelling companion receives and holds the passenger's ticket."); *Santos v. Costa Cruise Lines, Inc.*, 91 F. Supp. 3d 372, 378 (E.D.N.Y. 2015) ("[Passengers are bound by the terms of ticket contracts] even if the passengers do not immediately take possession of tickets that are held by a


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

spouse, travel agent, or other travel companion."); *Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F. Supp. 2d 352, 360 n.1 (S.D.N.Y. 2004) ("It is settled law that travel agents are to be construed as agents of ticket purchaser, and passengers are accordingly charged with constructive knowledge of ticket terms and conditions while the tickets are in their agent's possession.").

Further, in *Palmer v. Norwegian Cruise Line & Norwegian Spirit*, 741 F. Supp. 2d 405, 414-15 (E.D.N.Y. 2010), the court found the cruise line's ticket contract was enforceable where the ticket was purchased by someone other than plaintiff. The plaintiff never saw her ticket contract, nor was she ever told that she needed a ticket to board the cruise ship. *Id.* The court noted the plaintiff "could have easily inquired as to who had made her travel arrangements and asked to see her ticket booklet. She did not do so. Under these circumstances, it is difficult to see how Norwegian failed to do its part to provide the plaintiff with an opportunity to learn the rules that applied to her passage." *Id.* at 414-15.

In *Hunter v. Ncl Bah.,* No. 3:19-cv-1440-J-39MCR, 2021 U.S. Dist. LEXIS 64890, at *19 (M.D. Fla. Feb. 15, 2021), the court found the argument that plaintiff did not have an opportunity to review the contract was unpersuasive "particularly where the Guest Ticket Contract was available on-line." *Id.* (citing *Calixterio*, 2016 U.S. Dist. LEXIS 194682, at *10-15 (rejecting plaintiff's arguments that the terms of a cruise ticket contract were not reasonably communicated to her because her mother-in-law, through a travel agent, booked the cruise, she did not read or access the ticket contract, and she did not give express consent to third parties to accept the terms of the ticket contract on her behalf)(collecting cases); *see also Elliott v. Carnival Cruise Lines*, 231 F. Supp. 2d 555, 561 (S.D. Tex. 2002) ("The passenger need not have actual notice of the contents, and his failure to read the ticket does not preclude him from being bound by its terms."); *see also Santos v. Costa Cruise Lines, Inc.*, 91 F. Supp. 3d, 372, 378 (E.D.N.Y. 2015) (finding passengers were bound to the ticket contract's forum selection clause "even if the passengers [did] not immediately take possession of tickets that [were] held by a spouse, travel agent, or other travel companion"); *Palmer*, 741 F. Supp. 2d at 413 ("[T]he Second Circuit does not require that a passenger possess, read, see, or purchase a ship ticket for its terms to be enforceable, as long as the ticket was generally available to the passenger for a reasonable period of time both before and after embarkation."); *Ames v. Celebrity Cruises,* 1998 U.S. Dist. LEXIS 11559, 1998 WL 427694 at *5 (finding that plaintiffs had reasonable notice of the terms of their ticket contract where they received their tickets only two or three days prior to departure). In


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

addition to the above, passengers have even been held to be bound by the terms of a cruise ticket contract where they have never opened the ticket envelope. *Geller v. Holland-America Line*, 298 F.2d 618, 619 (2d Cir. 1962), cert. denied, 370 U.S. 909 (1962); *Morak v. Costa Armatori*, 1982 A.M.C. 1859, 1863 (E.D.N.Y. 1981).

As noted by the court in *Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F. Supp. 2d 352, 360 n.1 (S.D.N.Y. 2004), "[i]t is settled law that travel agents are to be construed as agents of ticket purchaser, and passengers are accordingly charged with constructive knowledge of ticket terms and conditions while the tickets are in their agent's possession." (citing *Ames v. Celebrity Cruise, Inc.,* 1998 U.S. Dist. LEXIS 11559, 1998 WL 427694 at *5 n.10 (S.D.N.Y. 1998)); *Foster v. Cunard White Star*, 121 F.2d 12, 13 (2d Cir. 1941) ("Plaintiff is charged with notice of the [contractual] limitation, since her brother, who purchased the ticket for her … had it in his possession for some 17 days before the voyage commenced."); *Ames,* 1998 U.S. Dist. LEXIS 11559, 1998 WL 427694 at *5 (finding that plaintiffs had reasonable notice of the terms of their ticket contract where they received their tickets only two or three days prior to departure).

Accordingly, the relevant inquiry is not whether the passenger read the ticket, but rather whether the passenger *had the opportunity* to read the ticket. *See Barkin v. Norwegian Caribbean Lines,* 1988 A.M.C. 645, 650 (D. Mass. 1987). The fact that Plaintiff chose to ignore the multiple "warnings" and notices throughout the ticket contract would not relieve her from its terms. *Id.*; *Boyles v. Cunard Line, Ltd.*, 1994 A.M.C. 1631, at 1636 (S.D.N.Y. 1994)("That plaintiffs failed to read the passenger ticket contract does not free them from the binding effect of its provisions. A party cannot avoid the effect of contractual provisions to which he is a party by simply choosing not to read the contract.")(citations omitted). As stated by Justice Cardozo in *Murray v. Cunard S.S. Co., Ltd*., 235 N.Y. 162, 166 (N.Y. 1923), "The passenger who omits to read takes the risk of the omission."

Here, for nearly seven months prior to the cruise, Plaintiff had ample opportunities to familiarize herself with the Ticket Contract's terms and conditions, and Celebrity made every effort to advise and notify her of same, sending numerous emails directing her to the Ticket Contract—including specifically the forum selection clause—and providing a link, and even requiring her to accept its terms during the on-line check in process. Celebrity reasonably communicated to Plaintiff that certain sections of the Ticket Contract, including the forum-selection clause, were of particular importance to her legal rights, and those terms (and all others)


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

should be read carefully. The England and Wales forum selection clause which is set forth in Plaintiff's Ticket Contract is valid[2] and should be enforced resulting in Plaintiff's Complaint being dismissed *with prejudice*.

**C. England and Wales is an Adequate Forum and Enforcement of the forum-selection clause does not contravene public policy.**

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 200 (11th Cir. 2019) (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Shute*, 499 U.S. at 593-95; *The Bremen*, 407 U.S. at 10)); *accord Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1246-47 (11th Cir. 2012) ("Plaintiffs seeking to invalidate forum-selection clauses in contracts have a heavy burden to demonstrate unenforceability.").

Because a forum-selection clause's presumption of validity may only be overcome by a clear showing that the clause is "unreasonable under the circumstances," *The Bremen*, 407 U.S. at 10, a forum-selection clause will only be invalidated when: "'(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of [her] day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy.'" *Lebedinsky*, 789 F. App'x at 200 (quoting *Krenkel*, 579 F.3d at 1281 (citing *Shute*, 499 U.S. at 593-95; *The Bremen*, 407 U.S. at 10)). Plaintiff cannot meet the heavy burden of satisfying any of these elements. *See Estate of Myhra*, 695 F.3d at 1246-47 ("Plaintiffs seeking to invalidate forum-selection clauses in contracts have a heavy burden to demonstrate unenforceability.").

Courts apply "a two-part test of 'reasonable communicativeness' when determining whether a forum-selection clause was induced by fraud or overreaching, considering (1) the clause's physical characteristics and (2) whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms." *Lebedinsky*, 789 F. App'x at 200; *see also Estate of Myhra*, 695 F.3d at 1244-46 (applying the two-part "reasonable communicativeness" test). Celebrity's forum-selection clause satisfies both prongs.

---

[2] Furthermore, although not necessary for this Court's analysis, Celebrity notes that the forum selection clause is similarly likely to be valid and enforceable under English law. *See* Declaration of Gareth Thomas ("Thomas Dec."), attached as Exhibit "2" at ¶23.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

First, the forum-selection clause's physical characteristics provide adequate notice. Under comparable circumstances, in *Lebedinsky* and *Myhra*, the Eleventh Circuit Court of Appeals upheld similar cruise line forum-selection clauses. In *Lebedinsky*, the Court explained that "[t]he placement and appearance of MSC Cruises' forum-selection clause were like the clause in *Estate of Myhra*, which" it had previously held "satisfied the physical characteristics prong." 789 F. App'x at 200. The Court considered how "the passenger was required to follow two hyperlinks and then scroll down to locate the forum-selection clause" and found "no meaningful difference between doing so and paging through a booklet." *Lebedinsky*, 789 F. App'x at 201. "And because the forum-selection language in [the defendant-cruise line's] terms and conditions had the same characteristics—set out in identical typeface under clear headings—it satisfied the physical characteristics prong." *Id*. (citing *Myhra*, 695 F.3d at 1245).

Further, the terms of the Ticket Contract were presented to Plaintiff in the form of a clickwrap agreement, thus rendering it enforceable. As the *Valiente* Court has previously explained and the Eleventh Circuit has affirmed, Florida courts recognize clickwrap agreements which occurs "'when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Valiente v. StockX, Inc.*, 645 F.Supp.3d 1331, 1337 (S.D. Fla. 2022). "In Florida and the federal circuits ... click-wrap agreements are valid and enforceable contracts." *Salco Distribs., LLC v. Icode, Inc.*, No. 8:05-CV-642-T-27TGW, 2006 U.S. Dist. LEXIS 9483, at *6 (M.D. Fla. Feb. 22, 2006). That Plaintiff may not have actually read the Terms before affirmatively assenting to them is not dispositive. *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011)("The Plaintiff's admitted failure to read the Participation Agreement does not excuse compliance with its terms."). Furthermore, as noted above, Plaintiff had the time and ample opportunity to become meaningfully informed of the forum selection clause, and reject it with impunity.

"A forum-selection clause can be unreasonable—and therefore unenforceable—'if the chosen forum is seriously inconvenient for the trial of the action.'" *Lebedinsky*, 789 F. App'x at 201-02 (quoting *The Bremen*, 407 U.S. at 16). The forum selection clause here does not deprive Plaintiff of her day in court because of inconvenience or unfairness. The Courts of England and Wales are not "seriously inconvenient" for the trial of this action because Plaintiff is domiciled in Canada, and the *Celebrity Eclipse* is a Malta flagged ship, owned by a Liberian company (Celebrity


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Eclipse, Inc.) and operated and managed by Celebrity, also a Liberian company, with a principal office in Florida, and a subsidiary office in England and Wales, United Kingdom ("U.K."). Ex. "1", Blanchette Dec. at ¶4. Further, the incident is alleged to have occurred on November 27, 2024, on which day the vessel was not in Florida but was on navigable waters (Southern Caribbean). DE 1, at ¶4. Additionally, even "[w]hen the parties to an agreement 'contemplated the claimed inconvenience,' … a court requires 'a heavy burden of proof' to render a forum-selection clause unenforceable." *Lebedinsky*, 789 F. App'x at 202 (quoting *The Bremen*, 407 U.S. at 16-17). Moreover, any inconvenience "by being forced to litigate in the contractual forum as [he] agreed to do was clearly foreseeable at the time of contracting." *Lebedinsky*, 789 F. App'x at 202. Here, there is no requirement on parties litigating in the courts of England and Wales to be physically present at interim hearings and they would not normally attend but be represented by English lawyers. Exhibit "2", Thomas Dec. at ¶33. Indeed, the courts of England and Wales are independent, fair and impartial, and highly experienced in dealing with complex international disputes, including those involving conflict of law and jurisdiction issues and the application of foreign laws. *Id.* at ¶¶36,37. As such (and as touched upon in Exhibit "2"), the courts of England and Wales have a variety of protocols and procedures in place which can be used to obtain testimony, documents, or other evidence from parties and non-parties which may be abroad if necessary. *Id.* at ¶¶32-35.

"Plainly, the courts of England meet the standards of neutrality and long experience in admiralty litigation." *The Bremen*, 407 U.S. at 12; *cf. Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (noting that "an adequate forum need not be a perfect forum"); *Sablic v. Armada Shipping Aps.*, 973 F. Supp. 745, 748 (S.D. Tex. 1997) (only the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render that forum inadequate). The U.K. is a modern western democracy with an established and refined legal system capable of resolving any claim the Plaintiff has against Celebrity. Courts throughout this nation have concluded that U.K. courts offer an adequate alternative forum and courts cannot "invalidate a forum selection clause 'simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States.'" *Lebedinsky*, 789 F. App'x at 203 (quoting *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1297 (11th Cir. 1998) ("Like the seven other courts of appeals that have addressed this issue, we hold that English law provides remedies adequate to address the complaints of the aggrieved


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

[plaintiffs].”)); *see also Estate of Myhra*, 695 F.3d at 1246-47 (enforcing the forum-selection clause and directing litigation to the Courts of England and Wales). “Only remedies that are ‘so inadequate that enforcement would be fundamentally unfair’ render a chosen forum inadequate.” *Lebedinsky*, 789 F. App’x at 203. Moreover, the Ticket Contract calls for the application of English law to govern the dispute with which the courts of England and Wales would be more familiar. *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F.App’x 870, 885 (11th Cir. 2018) (“the last factor favored litigation in England because the … agreement included a choice-of-law provision designating English law, with which English courts would obviously be more familiar”).

Lastly, the Courts of England and Wales have jurisdiction over this dispute. Where there is an exclusive jurisdiction clause in a contract providing for the Courts of England and Wales, the default position is that they will have jurisdiction over any claims which arise out of that contract given the parties intended as such. Ex. “2”, Thomas Dec. at ¶¶22,23. Moreover, for the avoidance of doubt, Celebrity consents to the litigation proceeding in England and Wales (including service of process), and it will not object to jurisdiction, venue, nor the Plaintiff requesting that any part of a hearing before the court in England and Wales be conducted remotely, including the provision of fact and/or expert witness evidence, as applicable. Ex. “1”, Blanchette Dec. at ¶47.

Here, similarly English law does not preclude the Plaintiff from pursuing an action for her claims, and courts have long recognized that the courts of England and Wales “are fair and neutral forums.” *Riley*, 969 F.2d at 958 (citing *The Bremen*, 407 U.S. at 12). “[T]here is no question as to British courts’ adequacy or availability.” *In re Sherwood Invs. Overseas Ltd., Inc.*, 442 B.R. 834, 837 (Bankr. M.D. Fla. 2010); *see also Aviation One*, 722 F. App’x at 885 (finding that England was an adequate and available alternative forum). Accordingly, Plaintiff can bring her claim in the contracted forum, and she cannot meet any of the criteria necessary to invalidate the presumptively valid and enforceable forum selection clause here.

Moreover, since there is little if any connection to Florida, the public interest would best be served by transferring the case to the Courts of England and Wales in the U.K. It is not in the public interest of the taxpayers of the State of Florida to spend resources or juror time, or have added congestion to an already busy docket, on a matter having little to no connection to this State and a non-U.S. resident. Clearly the courts of England and Wales have an interest in the dispute.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Moreover, there is no risk that a jury in England and Wales will be burdened with the matter. Ex. "2", Thomas Dec. at ¶18.

Finally, under the Ticket Contract, Plaintiff has one (1) year from the date of injury to commence suit. To ensure that Plaintiff has time to file suit in England and Wales, Celebrity agrees to waive any statute of limitations defense it may have, provided the Plaintiff re-files the matter in the Courts of England and Wales within six months of any Order hereby granting Defendant's Motion to Dismiss by the Court. *See* Ex. "1", Blanchette Dec. at ¶47; Ex. "2", Thomas Dec. at ¶38.

**Conclusion**

WHEREFORE, Defendant, CELEBRITY CRUISES, INC., respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's Complaint *with prejudice*, and for all other relief this Court deems just and proper under the circumstances.

Respectfully Submitted,

***/s/ Douglas K. Scheller***
Jerry D. Hamilton, Esq.
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
William Clair, Esq.
Florida Bar No.: 693741
wclair@hamiltonmillerlaw.com
Douglas K. Scheller, Esq.
Florida Bar No.: 1047851
dscheller@hamiltonmillerlaw.com
**HAMILTON, MILLER & BIRTHISEL, LLP**
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 12, 2026 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

*/s/Douglas K. Scheller*
Douglas K. Scheller

## SERVICE LIST

| | |
|---|---|
| Phillip M. Gerson, Esq.<br>Florida Bar No. 127290<br>pgerson@gslawusa.com<br>filing@gslawusa.com<br>Nicholas I. Gerson, Esq.<br>Florida Bar No. 0020899<br>ngerson@gslawusa.com<br>Edward S. Schwartz, Esq.<br>Florida Bar No. 346721<br>eschwartz@gslawusa.com<br>David Markel, Esq.<br>Florida Bar No. 78306<br>dmarkel@gslawusa.com<br>Lee A. Watson, Esq.<br>Florida Bar No. 356750<br>lwatson@gslawusa.com<br>**GERSON & SCHWARTZ, P.A.**<br>1980 Coral Way<br>Miami, FL 33145-2624<br>Telephone: (305) 371-6000<br>Facsimile: (305) 371-5749<br>***Attorney for Plaintiff*** | Jerry D. Hamilton<br>Florida Bar No. 970700<br>jhamilton@hamiltonmillerlaw.com<br>William Clair, Esq.<br>Florida Bar No.: 693741<br>wclair@hamiltonmillerlaw.com<br>Douglas K. Scheller, Esq.<br>Florida Bar No.: 1047851<br>dscheller@hamiltonmillerlaw.com<br>**HAMILTON, MILLER & BIRTHISEL, LLP**<br>150 Southeast Second Avenue,<br>Suite 1200<br>Miami, Florida 33131<br>Telephone: (305) 379-3686<br>Facsimile: (305) 379-3690<br>***Attorneys for Defendant*** |