**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 25-cv-25500-KMW**

LISE GILBERT,
a citizen and resident of Canada,

Plaintiff,

v.

CELEBRITY CRUISES, INC., a
Liberian Corporation,

Defendant.
_______________________________/

# DECLARATION OF KAREN BLANCHETTE

1. My name is Karen Blanchette. I am a resident of the United Kingdom and over the age of 18. I am a Senior Claims Handler of International Guest Claims for the International Risk Management Department at RCL Cruises Ltd. (hereinafter "RCL").

2. RCL, a company registered in England and Wales, is a wholly owned subsidiary of Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group (hereinafter "RCG").

3. RCG is the parent company of Celebrity Cruises, Inc. ("Celebrity"), the entity that operates the *Celebrity Eclipse* where the incident alleged by the Plaintiff Lise Gilbert ("Plaintiff" or "Gilbert") is claimed to have occurred.

4. The C*elebrity Eclipse* is a Malta flagged passenger cruise ship (IMO 9404314) owned by a Liberian company (Celebrity Eclipse, Inc.) and operated and managed by Celebrity, a subsidiary of RCG, also a Liberian company, with a principal office in Florida, and a subsidiary office in England and Wales, United Kingdom ("U.K.").

5. One function of RCL's International Risk Management Department is to defend commercial and personal injury claims and litigation advanced by guests against RCG or its subsidiaries, including Celebrity.

6. The International Claims Handlers and I are based in and/or work out of RCL's office located at Building 7, The Heights, Brooklands, Weybridge, Surrey, KT13 0XW, U.K.

7. I, and my team, are involved in the investigation of guest incidents, communicating with guests and, potentially, their counsel regarding claims, providing guidance and support to outside counsel representing Celebrity, RCL or its subsidiaries in litigation, and the processing of settlements and judgments.

8. The International Claims Team has served these functions for almost fourteen years since June 2011.

9. I am employed by RCL and am familiar with the business operations of RCL and RCG, including its subsidiaries (Celebrity). I am, in all respects, competent and qualified to make this Declaration.

10. All statements made in this Declaration are based on my personal knowledge and/or on information obtained from RCL's and/or RCG's business records. True and correct copies of references records are attached as exhibits to this Declaration.

11. I understand that this Declaration will be submitted in support of Celebrity's Motion to Dismiss the Plaintiff's Complaint ("Complaint") brought by Plaintiff. I am familiar with the allegations of Plaintiff's Complaint filed in the above styled action [ECF No. 1].

12. I am familiar with the terms and conditions that applied to the Plaintiff's booking for the cruise on the *Celebrity Eclipse* that left port on November 25, 2024.

13. As part of its ordinary course of business, Celebrity's system maintains records and data showing the date and time when emails, invoices, or other booking documents were sent to guests, their travel agents, and/or representatives as well as the email address to which the document or correspondence was sent. These

transactions are logged in the system when transmitted, and the system data is automatically stored as a record in the course of a regularly conducted activity of Celebrity and its related corporate entities, including parent or affiliated companies.

**The Passenger Cruise Ticket Contract**

14. Celebrity is a global cruise line, with a substantial amount of its passengers coming from countries all over the world including for example Canada, Australia, England, among other countries in Europe, South America, Africa, and North America. The *Celebrity Eclipse* sails various itineraries, primarily within the Caribbean, with regular calls to regional ports.

15. As of April 12, 2023, all guests sailing on Celebrity vessels are bound by a version of a ticket contract that is dictated by their Primary Country of Residence. "Primary Country of Residence" is a term of art defined across guest-facing booking and marketing channels and in the ticket contract itself as:

> [T]he country where you primarily reside at the time of booking the Cruise. This should be indicated by you, the Lead Guest, or another agent or representative of yours at the time of booking the Cruise or at online check-in.

16. Celebrity maintains a "Guest Terms and Conditions" microsite that houses the various versions of the ticket contract (otherwise known as "Booking Conditions" in certain global markets) based on the Primary County of Residence, as well as other terms and conditions and policies relevant to cruise sailings. The site URL is: https://www.celebritycruises.com/guest-terms.

17. As outlined in more detail below, guests are prompted at multiple points in the booking and pre-boarding process to visit the site and view the terms and conditions applicable to their cruise sailing based on their Primary Country of Residence.

18. A specific cruise ticket contract for Canada exists on the site and applies to guests whose Primary Country of Residence is Canada. The version of the Canada Cruise Ticket Contract ("Ticket Contract") affirmatively accepted and agreed to by Plaintiff is attached hereto as Exhibit "A."

19. Depending on the booking method, a guest and/or their travel agent may indicate the guest's Primary Country of Residence or otherwise indicate the guest's home address in the process of completing a cruise booking.

20. Additionally, the online check-in process, whether completed online or via mobile app, prompts the guest to affirmatively make a selection as to their Primary Country of Residence via a drop-down menu, and then click a checkbox accepting the applicable Ticket Contract.

21. Furthermore, at any time prior to a cruise, a guest can access the applicable Ticket Contract by visiting https://www.celebritycruises.com/guest-terms, and following the prompts to select their Primary County of Residence shown below:




22. After selecting the applicable Primary Country of Residence, a guest is directed to a site which has the Ticket Contract in full.

## The Subject Booking

23. Here, the subject sailing was originally booked through the travel agency Le Voyagiste de Québec ("Travel Agent"), acting through its authorized personnel, under the reservation ID number 1710284, on or about March 17, 2024. Plaintiff, Lise Gilbert Picard, and Gaston Picard (upon information and belief, her

husband), were both named as guests under the booking for a cruise aboard the *Celebrity Eclipse* departing on November 25, 2024.

24. Plaintiff is a Canadian national domiciled in Canada.

25. On March 17, 2024, a Booking Confirmation was sent to Plaintiff's Travel Agent, which contained a capitalized "IMPORTANT NOTICE TO GUESTS", immediately below the trip itinerary, stating:

> IMPORTANT NOTICE TO GUESTS: Your cruise ticket contract, and the terms and conditions for the purchase of any products, services, shore excursions, or other activities related to your cruise, contain important limitations on the rights of passengers, including provisions relating to limitation of liability, forum selection, governing law, and the use of alternative dispute resolution to resolve certain types of disputes.
>
> The applicable cruise ticket contract is determined by your Primary Country of Residence. "Primary Country of Residence" means the country where you primarily reside at the time of booking the cruise. This should be indicated by you, your agent, or other representative at the time of booking the cruise or at online check-in.
>
> To find the cruise ticket contract, and purchase terms and conditions applicable to you, please visit this link.

A copy of this Booking Confirmation is attached as Exhibit "B."

26. The "link" provided was an active, clickable link that redirected to the following site URL: https://www.celebritycruises.com/guest-terms/, and the following prompts to select their Guests Terms and Conditions shown below:

Celebrity Cruises

# Guest Terms and Conditions



Your Cruise Purchase

CLICK HERE

Please click above to review the Cruise Ticket Contract or Booking Conditions applicable to your Cruise or Cruisetour.



Your Purchase of Shore Excursions and All Other Goods and Services

CLICK HERE

Please click above to view the Global Purchase Terms and Conditions which govern your purchase of any products, services, shore excursions, or other activities related to your Cruise or Cruisetour.



Guest Health, Safety, and Conduct Policy

VIEW MORE

Please click above to review the Guest Health, Safety and Conduct Policy.



Loyalty Programs

CAPTAIN'S CLUB

BLUE CHIP CLUB

RCG STATUS MATCH

Please click above to review Terms & Conditions applicable to our loyalty programs.

**IMPORTANT NOTICE TO GUESTS:** Your Cruise Ticket Contract/Booking Conditions and the Global Purchase Terms and Conditions contain important limitations on the legal rights and obligations of passengers, as well as conditions, limitations, and exclusions that may apply to you. It is important that you read them carefully before your cruise.

27. The page clearly displays a clickable link under "YOUR CRUISE PURCHASE" directing passengers to review their Cruise Ticket Contract. A specific cruise ticket contract for Plaintiff as a Canadian national exists on the site and applies based on her Primary Country of Residence. Canada Cruise Ticket Contract is attached hereto as Exhibit "A." Also featured prominently on the Guest Terms and Conditions webpage is another **bolded** and red "**IMPORTANT NOTICE TO GUESTS**".

28. On April 19, 2024 and August 6, 2024 additional Booking Confirmation Invoices were sent via email to Plaintiff's Travel Agent. *See* Booking Confirmation Invoices, Composite Exhibit "C." The Booking Confirmation Invoices indicated each was a document from Celebrity, contained the same **bolded** "**IMPORTANT NOTICE TO GUESTS**" immediately below the Booking Itinerary section, each directed Plaintiff to the terms and conditions that applied to her cruise as set forth in the Ticket Contract, and provided a link to access the Celebrity webpage directing Plaintiff to the applicable Ticket Contract. *See supra* ¶¶25,26.

29. On October 11, 2024, at 10:35:53 AM, Plaintiff, through her Travel Agent, completed the online check-in for the subject cruise on the Web. Where, as here, two guests are named on the same booking under the same booking ID, the online check-in process for both can be completed from one of the two named guests associated with the booking, or alternatively by their travel agent managing their booking. When the process is completed by a travel agent, it is undertaken in the name of each guest and pursuant to that guest's authorization. Each guest's check-in is processed under that guest's own name and unique passenger identification number ("Passenger ID"), and the Ticket Contract is accepted on that guest's behalf, pursuant to the guest's express legal authorization, as part of the check-in process.

30. During that process, on October 11, 2024, Plaintiff, through her Travel Agent, selected "Canada" as the Primary Country of Residence and affirmatively checked the box accepting the Ticket Contract which stated, "I, [Plaintiff], have read, understand, and accept the cruise ticket contract terms and the health acknowledgement. I affirm that (a) each guest whom I am checking in has also read,

understands and accepts the applicable cruise ticket terms and the health acknowledgement and (b) I am legally authorized to accept the cruise ticket contract terms and health acknow1edgement on behalf of each guest I am checking in." A screenshot of the representative step in the online check-in process required to be completed by Plaintiff, or her Travel Agent, is provided below:



Celebrity X Cruises

Guest › Expenses › Contracts › Arrival

## Legal notice

IMPORTANT NOTICE TO GUESTS: Your cruise ticket contract or booking conditions, and the terms and conditions for the purchase of any products, services, shore excursions, or other activities related to your cruise, contain important limitations on the rights of passengers, including provisions relating to limitation of liability, forum selection, governing law, and the use of alternative dispute resolution to resolve certain types of disputes. The applicable cruise ticket contract or booking conditions is determined by your Primary Country of Residence. "Primary Country of Residence" means the country where you primarily reside at the time of booking the cruise. This should be indicated by you, your agent, or other representative at the time of booking the cruise or at online check-in. To find the applicable cruise ticket contract or booking conditions, and the purchase terms and conditions, please visit https://www.celebritycruises.com/guest-terms

## Health acknowledgement

Exposure to pathogens (such as the virus that causes COVID-19) is an inherent risk in places where people gather and may result in severe illness or death. Exposure may occur at any point during your voyage, onboard or ashore. Remaining onboard at all times during your voyage will not prevent exposure because pathogens may be brought onboard by others, including passengers who choose to participate in shore excursions or activities ashore in our various ports of calls or private destinations. Our health and safety measures mitigate the risk of exposure but cannot eliminate it entirely. Before booking or sailing on a cruise, all guests should consider their individual risk level for severe illness resulting from pathogen exposure and make an informed travel decision on that basis. We recommend guests with a higher risk of severe illness consult with their doctor prior to booking or sailing with us.

By booking a cruise with us, on behalf of yourself and/or others for whom you are acting (collectively "you" or "your"), you acknowledge that you understand the risks related to exposure to pathogens and their resulting illnesses while cruising with us, including those relating to guests who are at a higher risk of severe illness.

Further, you agree to review and comply with our Guest Health, Safety and Conduct Policy, as well any of our health or safety instructions, or other posted signage. Failure to do so will lead to you being denied boarding or may constitute cause for your removal, as well as the denial of boarding or removal of your traveling party, from the vessel.

You also acknowledge that we will collect and use personal information, including health information, in connection with these measures, and may disclose it to health or port authorities, if required.

Travelers sailing from Australia further acknowledge:

First, that individuals arriving to Australia as an international passenger must ensure they meet Australia's international border entry requirements, including vaccination status, visa, and travel exemption requirements (if applicable).

Second, that there exists a potential for cancellation, modification or adjustment of onboard activities and shore excursions as well as a potential for itinerary modifications resulting from COVID-19 levels onboard that exceed a certain threshold, and that passengers who test positive for COVID-19 or who are considered close contacts of confirmed COVID-19 cases may experience disruption (up to and including cancellation) of onward travel and accommodations post-cruise.

Lastly, that passengers testing positive for COVID-19 onboard will be required to isolate and will have access to health care onboard at no charge in the ship's medical facility; that if health needs cannot be supported onboard retrieval will be coordinated with the appropriate maritime authorities; and that COVID-19 outbreaks onboard will be managed in accordance with cruise operator protocols in place at the time of the sailing, which are available on our website.

Primary country of residence
Canada

I, , have read, understand and accept the cruise ticket contract terms and the health acknowledgement. I affirm that (a) each guest whom I am checking in has also read, understands and accepts the applicable cruise ticket terms and the health acknowledgement and (b) I am legally authorized to accept the cruise ticket contract terms and health acknowledgement on behalf of each guest I am checking in.

Questions? Call us

Back Continue

31. Clicking on the URL link, in the "Legal notice" section, following the statement "To find the applicable cruise ticket contract or booking conditions, and the purchase terms and conditions, please visit: https://www.celebritycruises.com/guest-terms" in the screen shot above brings the user to the Celebrity "Guest Terms and Conditions" webpage (pictured *supra* ¶26).

32. The system data reflecting completion of the online check-in process for Plaintiff, including acceptance of the Ticket Contract terms on her behalf, is attached as Exhibit "D." The data identifies the "Grantor Email" and associated email address lisegilbert117@gmail.com, used to complete the check-in process for Plaintiff, as reflected by her unique Passenger ID and corresponding booking information. As a condition of completing online check-in, the Ticket Contract terms and conditions *must* be accepted, whether directly by the passenger or by an authorized third party travel agent acting on the passenger's behalf.

33. Additionally, as soon as the online check-in process was completed, Plaintiff was transmitted a "Prepare for Your Boarding Day" email to the email address lisegilbert117@gmail.com, starting with "YOUR UPCOMING SAIL" and containing the **bolded** "**IMPORTANT NOTICE TO GUESTS**", at the bottom of the email, stating:

> **IMPORTANT NOTICE TO GUESTS: Your cruise ticket contract or booking conditions, and the terms and conditions for the purchase of any products, services, shore excursions or other activities related to your cruise, contain important limitations on the rights of passengers, including provisions relating to limitation of liability, forum selection, governing law, and the use of alternative dispute resolution to resolve certain types of disputes. The applicable cruise ticket contract or booking conditions is determined by your Primary Country of Residence. "Primary Country of Residence" means the country where you primarily reside at the time of booking the cruise. This should be indicated by you, your agent, or other representative at the time of booking the cruise or at online check-in. To find the applicable cruise ticket contract or booking conditions, and the purchase terms**

> **and conditions, please visit www.celebritycruises.com/guest-terms.**
>
> **©2024 Celebrity Cruises Inc. Ships' registry: Malta.**
>
> (no emphasis added).

A copy of the "Prepare for Your Boarding Day" email, together with the highlighted corresponding system data reflecting its transmission on October 11, 2024, at 10:42 AM, is attached as Composite Exhibit "E." The header fields reflecting the "From," "Sent," and "To" information have been redacted because the correspondence was internally forwarded by Celebrity for purposes of preservation and inclusion as an exhibit, and those forwarded header fields do not reflect the metadata as presented to Plaintiff at the time of transmission; however, the substance of the email accurately reflects the content transmitted to Plaintiff on the date represented.

34. Clicking the link provided in the email (*see* Exhibit "E") redirected to the following site URL: www.celebritycruises.com/guest-terms, which clearly displays a clickable link under "YOUR CRUISE PURCHASE" guiding passengers to review their Cruise Ticket Contract. This is the same clickable link provided in the three (3) Booking Confirmations discussed *supra*.

35. On October 26, 2024, at 3:34 AM, via an automated system, Plaintiff's Travel Agent received an email at stephanie@levoyagistedequebec.com with subject heading "Your Guest Vacation Documents are now ready for Group ID: 7273438 and Reservation ID: 1710284 Gilbert Picard - EC 25 Nov 2024" containing the Guest Ticket Booklet as an attachment. *See* System Data with relevant data excerpt highlighted, email, and Guest Ticket Booklet, Composite Exhibit "F." The email states in relevant part:

> Dear LISE GILBERT PICARD,
>
> Thanks again for choosing Celebrity Cruises. Your electronic cruise documents for Reservation Number 1710284 are now ready at the link below. You will need to enter your reservation number, last name, ship and sail date to access your documents. Please print and carry these documents with you during the boarding process as well as your required forms of citizenship and identification (i.e: a valid

> Passport or other Department of Homeland Security approved documents).
>
> ONLINE CHECK-IN
>
> To expedite the boarding process, please ensure that you have completed your online check-in no less than 4 days prior to your sailing. There you will be asked to complete your immigration and embarkation forms, accept the Cruise Ticket Contract, and set up your onboard expense account. Also, please print your Xpress Pass which will be collected during ship check-in formalities. For your convenience, a link to online check-in is shown below.
>
> http://www.celebritycruises.com/onlinecheckin

The email transmitted is part of the attached composite Exhibit "F."

36. Clicking the link provided in the email allowed the guest to access an electronic version of their Guest Ticket Booklet through their guest portal. Nevertheless, the Guest Ticket Booklet was also provided as an attachment to the email. *See* Composite Exhibit "F."

37. The first page of the Guest Ticket Booklet (and the subsequent pages) indicates that this was a document from Celebrity. On the first page of the Guest Ticket Booklet, Plaintiff was directed to the terms and conditions that applied to her cruise as set forth in the Ticket Contract, accordingly:

> **IMPORTANT NOTICE TO GUESTS:**
>
> Your cruise ticket contract or booking conditions, and the terms and conditions for the purchase of any products, services, shore excursions, or other activities related to the cruise sailing, contain important limitations on the rights of passengers, including provisions relating to limitation of liability, forum selection, governing law, and the use of alternative dispute resolution to resolve certain types of disputes.
>
> The applicable cruise ticket contract or booking conditions and the purchase terms and conditions is determined by your Primary Country of Residence. 'Primary Country of Residence' means the country where you primarily reside at the time of booking the cruise. This should be indicated by you, your agent, or other representative at the time of booking the cruise.

> To find the applicable cruise ticket contract or booking conditions, and the purchase terms and conditions, please visit www.celebritycruises.com/guest-terms.

The Guest Ticket Booklet issued for Plaintiff is part of the attached Composite Exhibit "F."

38. At the top of the first page of the Ticket Contract accepted by Plaintiff, in **bold**, capitalized red letters, the following language appears:

> **IMPORTANT NOTICE TO GUESTS**
>
> **THIS CRUISE/CRUISETOUR TICKET CONTRACT IS APPLICABLE ONLY TO GUESTS WHOSE PRIMARY COUNTRY OF RESIDENCE IS CANADA. IF YOUR PRIMARY COUNTRY OF RESIDENCE IS NOT CANADA, THEN PLEASE VISIT https://www.CelebrityCruises.com/guest-terms/ TO DETERMINE THE CRUISE/CRUISETOUR TICKET CONTRACT OR BOOKING TERMS AND CONDITIONS THAT APPLY TO YOU. PLEASE REFER TO SECTION 2.i BELOW FOR THE DEFINITION OF "PRIMARY COUNTRY OF RESIDENCE."**
>
> **THIS CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS TICKET CONTRACT. YOU EXPRESSLY AGREE TO THE TERMS HEREIN, AND AGREE AND UNDERSTAND THAT YOU ARE BOUND BY THE PROVISIONS OF THIS AGREEMENT FROM THE TIME OF BOOKING AND AFTER THE CRUISE TERMINATES. YOU AGREE THAT CARRIER MAY CHANGE, MODIFY, AND UPDATE THE TERMS OF THIS TICKET CONTRACT, THAT NOTICE OF SUCH CHANGE MAY OR MAY NOT BE GIVEN, AND THAT YOU NONETHELESS AGREE TO BE BOUND BY ANY SUCH CHANGE OR MODIFICATION.**
>
> **YOU ARE ESPECIALLY DIRECTED TO CAREFULLY READ AND UNDERSTAND SECTIONS 3, AND 10 THROUGH 12, AS THEY CONTAIN SIGNIFICANT LIMITATIONS ON YOUR RIGHTS TO ASSERT CLAIMS FOR PERSONAL INJURIES, ILLNESS OR DEATH, AND BAGGAGE AND PERSONAL PROPERTY LOSS OR DAMAGE, AGAINST CARRIER, THE VESSEL, RELATED ENTITIES AND THEIR OFFICERS,**

**AGENTS AND EMPLOYEES AND OTHER THIRD PARTIES, INCLUDING TIME LIMITS AND FORUM FOR CLAIMS AND SUITS, APPLICABLE LAW, ARBITRATION, AND IN REM PROCEEDINGS.**

**GUESTS SAILING TO THE GALAPAGOS ISLANDS SHOULD REFER TO SECTIONS 5.b AND 13.e FOR NOTICES SPECIFIC TO GALAPAGOS CRUISES.**

**IF YOU ARE THE PERSON MAKING A BOOKING YOU ARE ALSO DIRECTED TO CAREFULLY READ AND UNDERSTAND SECTION 16.a TO UNDERSTAND YOUR RESPONSIBLITIES AS THE LEAD GUEST.**

Exhibit "A", Ticket Contract.

39. Paragraph 10 of the Ticket Contract titled "FORUM SELECTION; GOVERNING LAW; TIME LIMITS TO BRING SUIT; ARBITRATION," contains the following provision:

a. **FORUM SELECTION & GOVERNING LAW:**

(i.) EXCEPT AS PROVIDED IN SECTION 10.c. BELOW, ALL DISPUTES, CLAIMS OR OTHER MATTER OF ANY DESCRIPTION ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY RELATED OR INCIDENT TO THIS AGREEMENT, THE CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT (INCLUDING A CLAIM FOR PERSONAL INJURY, ILLNESS OR DEATH OF A GUEST) MUST BE LITIGATED, IF AT ALL, IN AND BEFORE THE COURTS OF ENGLAND AND WALES, TO THE EXCLUSION OF ALL OTHER COURTS OR TRIBUNALS. GUEST HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT GUEST MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE COURTS OF ENGLAND AND WALES.

(ii.) THIS AGREEMENT AND ALL DISPUTES OR CLAIMS WHATSOEVER BY GUEST ARISING FROM OR RELATED TO THIS AGREEMENT SHALL IN ALL RESPECTS, AND WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW. FOR THE AVOIDANCE OF DOUBT, THIS SECTION 10.a.ii APPLIES TO ALL DISPUTES AND CLAIMS WHETHER RESOLVED IN COURT OR IN ARBITRATION. EXCEPT AS

> OTHERWISE EXPRESSLY SPECIFIED IN THIS AGREEMENT, GUEST AGREES THIS CHOICE OF LAW SUPERSEDES AND PREEMPTS ANY PROVISION OF LAW OF ANY OTHER COUNTRY, STATE, OR TERRITORY.
>
> **b. TIME LIMITS TO PROVIDE NOTICE AND FILE A CLAIM:**
>
> **(i) FOR PERSONAL INJURY/ILLNESS/DEATH CLAIMS:** NO SUIT SHALL BE MAINTAINABLE AGAINST THE CARRIER, THE VESSEL OR THE TRANSPORT FOR PERSONAL INJURY, ILLNESS OR DEATH OF ANY GUEST UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, IS DELIVERED TO CARRIER AT THE FOLLOWING ADDRESS, C/O RCL CRUISES LTD., BUILDING 7, THE HEIGHTS, BROOKLANDS, WEYBRIDGE, SURREY, ENGLAND, KT13 0XW OR VIA EMAIL TO claims.intl@rccl.com, WITHIN SIX (6) MONTHS FROM THE DATE OF THE INJURY, ILLNESS OR DEATH AND SUIT IS COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DATE OF SUCH INJURY, ILLNESS OR DEATH AND PROCESS SERVED WITHIN 120 DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE, TERRITORY OR COUNTRY TO THE CONTRARY.
>
> *Id.*

40. Subsequently, on both November 15, 2024 and November 22, 2024, Plaintiff was transmitted additional "Prepare for Your Boarding Day" emails to the email address lisegilbert117@gmail.com, starting with "YOUR UPCOMING SAIL" and containing the **bolded** "**IMPORTANT NOTICE TO GUESTS**", at the bottom of the emails, providing a URL link to the webpage where the Ticket Contract could be read and reviewed in detail. *See supra* ¶33. Copies of the "Prepare for Your Boarding Day" emails, together with the highlighted corresponding system data reflecting their transmission on November 15, 2024, at 4:56 AM, and November 22, 2024, at 6:56 AM, are attached as Composite Exhibit "G." The header fields reflecting the "From," "Sent," and "To" information have been redacted because the correspondence was internally forwarded by Celebrity for purposes of preservation and inclusion as exhibits, and those forwarded header fields do not reflect the metadata as presented to Plaintiff at the time of transmission; however, the

substance of each email accurately reflects the content transmitted to Plaintiff on the dates represented.

41. Celebrity requires a valid signed contract (including affirmative electronic acceptance) before any passenger can board a ship. As part of Celebrity's routine policy, Plaintiff was required to complete check-in and accept the terms and conditions of the Ticket Contract, either personally or through an authorized travel agent acting on her behalf, as a condition precedent to boarding the ship for the subject cruise voyage, which was completed. Plaintiff accepted the terms and conditions of the Ticket Contract when the Online Check-in Cruise Ticket Contract in Exhibit "A" was issued to and received by Plaintiff prior to boarding the ship. *See supra.*

42. As part of its regular course of business, Celebrity and its related corporate entities, including parent or affiliated companies, maintain records, financial data, pre-cruise guest and travel agent inquiries, and complaints within a computer system known as "AS400" or "Colonial" (AS400 and Colonial are the same computer system, it is referred to by two different names). I am familiar with the computer system and access it regularly in the course of my employment.

43. After all the notices above were sent to Plaintiff and her Travel Agent from March 17, 2024, up until the cruise beginning on November 25, 2024, Plaintiff made no complaint to Celebrity related to the subject cruise and did not contact Celebrity regarding the booking or any changes. Had Plaintiff contacted Celebrity, then date-stamped electronic notes would have been entered into AS400/ Colonial. These notes would have summarised the complaint or inquiry received from Plaintiff and the resolution achieved.

44. Plaintiff further did not contact Celebrity regarding the Ticket Contract during the on-line check in process when she and/or her Travel Agent on her behalf affirmatively agreed to the terms of the Ticket Contract on October 11, 2024.

45. Had Plaintiff taken issue with the terms of the Ticket Contract and raised it with Celebrity when she and/or her Travel Agent received the

correspondence from March 17, 2024 up until the cruise beginning on November 25, 2024, she could have requested the cruise be canceled. She did not do so.

46. Moreover, consistent with the terms of the Ticket Contract, even if she did not raise the issue with Celebrity, she still could have canceled the 10-night cruise up to 120 days or more prior to the first day of the cruise with no cancellation charge except for a non-refundable deposit amount. *See* Exhibit "A" at ¶8.

47. I have read the Declaration of Claire Michelle Mulligan in support of Celebrity's Motion to Dismiss, which affirms that the Courts of England and Wales have jurisdiction over this dispute and further allow for Plaintiff, or any of the Plaintiff's fact or expert witnesses (if necessary) to give their evidence in chief remotely. For the avoidance of doubt, Celebrity consents to the litigation proceeding in England and Wales, and it will not object to jurisdiction, venue, nor the Plaintiff requesting that any part of a hearing before the court in England and Wales be conducted remotely, including the provision of fact and/or expert witness evidence, as applicable. Under the Ticket Contract, Plaintiff has one (1) year from the date of injury to commence suit against the defendant. Celebrity further agrees to waive any statute of limitations defense it may have provided the Plaintiff re-files the matter in the Courts of England and Wales within six (6) months of any Order granting Defendant's Motion to Dismiss in these proceedings.

Under penalties of perjury under the laws of the United States and State of Florida, I declare that I have read the foregoing Declaration and the facts stated in it are true.

Dated: February 12th, 2026

DocuSigned by:
Karen Blanchette
7374B44FAF124C7...

Karen Blanchette