UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 25-cv-25500-KMW

LISE GILBERT,

Plaintiff,

v.

CELEBRITY CRUISES, INC., a
Liberian Corporation,

Defendant.
_______________________________________/

**PLAINTIFF'S OBJECTIONS TO AMENDED REPORT AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS (ECF 28)**

Plaintiff, LISE GILBERT, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1), and Rule 4 of the Magistrate Judge Rules of this District, objects to the Amended Report and Recommendations on Motion to Dismiss entered August 21, 2026 (ECF 28) (the "Amended R&R"), which recommends that the Court grant without prejudice, on forum non conveniens grounds, the Motion to Dismiss (ECF 11) filed by Defendant CELEBRITY CRUISES, INC. ("CELEBRITY"), and states as follows:

**Background**

1. Ms. GILBERT boarded the Defendant CELEBRITY's vessel "Eclipse" in Fort Lauderdale, Florida, as a fare-paying passenger. Two days into the voyage, on November 27, 2024, Ms. GILBERT was traversing a common passenger walkway when she stepped onto a wet, slippery, foreign and/or transitory substance that CELEBRITY had neither cleaned up nor warned her of. She fell and suffered a fracture to her right femur. CELEBRITY's onboard medical staff

determined that Ms. GILBERT could not be cared for aboard the *Celebrity Eclipse*. The next day, on November 28, 2024, CELEBRITY offloaded Ms. GILBERT at the vessel's next scheduled port of call, Tortola. She was transported to D. Orlando Smith Hospital, where on December 3, 2024 she underwent open reduction and internal fixation of a right intertrochanteric femur fracture.

2. Ms. GILBERT alleges that CELEBRITY failed to maintain the area, failed to correct a condition it knew or should have known was there, and failed to warn her of it. (ECF 1 at ¶¶ 16-38.)

3. Ms. GILBERT is a citizen and resident of Canada. (ECF 1 at ¶ 2).

4. Ms. GILBERT bought her passage through a travel agency in Quebec, Le Voyagiste de Québec (ECF 11-1 at ¶ 23), and the forum clause CELEBRITY now invokes reached her as a term of a form contract accepted by her travel agent during online check-in, weeks before she sailed. (ECF 11-1 at ¶¶ 29-30).

5. The voyage on which Ms. Gilbert was injured was a Florida round trip. The voyage embarked from Fort Lauderdale on November 25, 2024 and returned to Fort Lauderdale on December 5, 2024. (ECF 11-3). Ms. GILBERT fell on November 27, 2024, while the Celebrity Eclipse was at sea. (ECF 1 at ¶¶ 4, 10-13). The *Celebrity Eclipse* is a Malta-flagged vessel owned by Celebrity Eclipse, Inc., a Liberian company, and operated and managed by CELEBRITY, also a Liberian company, with its principal office in Florida. (ECF 11-1 at ¶ 4). The ship's itinerary on the subject voyage did not have any port of call near England or Wales, and neither did anyone or anything involved in this case.

6. CELEBRITY moved to dismiss on *forum non conveniens* grounds, relying on a provision of its Canadian-resident ticket contract that requires Canadian passengers to sue exclusively in the courts of England and Wales, neither in the United States, where CELEBRITY


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

operates and where this voyage began and ended, nor in Canada, where Ms. GILBERT lives. (ECF 11 at 7, 20; ECF 11-1 at ¶¶ 39, 47). CELEBRITY asks this Court to send a Canadian woman with a fractured femur across the Atlantic to sue a Florida-based operator over a fall that happened in the Caribbean. The Amended R&R, (ECF 28), recommends that the Motion be granted without prejudice.

**Objection 1: The Amended R&R Treats Enforceability as Unopposed, When the Plaintiff's Response Placed It Squarely at Issue.**

7. Enforcement of a forum-selection clause proceeds in two steps. The clause must first be enforceable under *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 17 (1972) and its progeny; only then does the analysis of *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49 (2013), govern the venue calculus. *Atlantic Marine* states in the footnote appended to the sentence announcing its rule: "Our analysis presupposes a contractually valid forum-selection clause." *Id*. at 62 n.5.

8. Forum selection clauses are generally enforceable, but, as Ms. GILBERT argued in her Response, (ECF 14), a forum selection clause can be overcome if the objecting party makes a strong showing that the clause was "induced by fraud or overreach," that the party "would unfairly be deprived of her day in court" if the clause were enforced, that the "chosen law would deprive the plaintiff of a remedy," or that "enforcement of the clause would contravene public policy." *Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 200 (11th Cir. 2019).

9. Ms. GILBERT's Response invoked those grounds. It recited each of them with supporting authority (ECF 14 at ¶ 5); addressed the relationship between the chosen forum and a Canadian plaintiff (¶ 6); argued that a fully remote English or Welsh proceeding would deprive her of the opportunity to present her case in person before the judicial officer deciding her fate (¶ 7); described the burdens of transatlantic litigation (¶ 8); and asked the Court to decline enforcement


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

because those burdens would "unfairly deprive her of an effective remedy and her day in court" (¶ 9).

10. The Amended R&R treats CELEBRITY's showing of adequacy as unopposed, and then, applying *Atlantic Marine's* private-interest waiver rule, deems Ms. GILBERT's inconvenience arguments waived. Amended R&R at 4-5, 6-7. But the private-interest waiver rule operates only after the clause is held enforceable; it should not be the reason for declining to decide enforceability. *See Atl. Marine*, 571 U.S. at 62 n.5, 64.

11. The enforceability of the clause was presented to the Magistrate Judge, and Rule 72(b)(3) commits it to this Court's *de novo* determination.

**Objection 2: England and Wales Is a Remote Alien Forum With No Connection to This Dispute, and the Circumstances of Accession Confirm That Enforcement Would Be Unreasonable**

12. In *Bremen*, the Supreme Court distinguished the international towage contract before it from "an agreement between two Americans to resolve their essentially local disputes in a remote alien forum," and observed that such an agreement "might suggest . . . that the parties did not have the particular controversy in mind when they made their agreement." *The Bremen*, 407 U.S. at 17. What made the hypothetical forum remote and alien was the absence of any connection between the forum and the controversy, not the nationality of the litigants. Here neither party is British, and the controversy has no English connection at all.

13. That distinction is what separates this case from the authorities CELEBRITY relies upon. In *Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341 (11th Cir. 2021), the Eleventh Circuit enforced an Italian forum clause, but the Italian forum was connected to the dispute: the carrier was headquartered in Italy and the cruise was scheduled to call at Italian ports. *Id.* at 1346 n.1. In *Lebedinsky*, the voyage of the MSC Musica began and ended in Italy and called at no United States


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

port. 789 F. App'x at 202. And in *Estate of Myhra v. Royal Caribbean Cruises, Ltd*., 695 F.3d 1233, 1244 n.33 (11th Cir. 2012), the English forum was the home of the passengers, who were British nationals who purchased their passage from a British travel agent.

14. None of that is present here. CELEBRITY is a Liberian corporation with its principal office in Florida, and the vessel is owned by another Liberian company. (ECF 11-1 at ¶ 4). CELEBRITY's Reply concedes the point, describing England and Wales as "not Celebrity's 'home turf.'" (ECF 17 at 2). The voyage embarked from and returned to Fort Lauderdale and did not call at any port in England or Wales. (ECF 11-3). Ms. GILBERT is a Canadian citizen and resident who bought her ticket in Quebec. (ECF 1 at ¶ 2; ECF 11-1 at ¶ 23). Her treating physicians and medical records are in North America.

15. The only connection between this controversy and England and Wales is the clause itself. Neither party is domiciled there, the voyage neither began, ended, nor called there, the injury did not occur there, and no witness or record is located there. That is the "remote alien forum" *Bremen* described, and it bears directly on whether enforcement of this clause is reasonable under the circumstances.

16. The circumstances in which CELEBRITY obtained accession to the clause bear on that same inquiry. Ms. GILBERT's Response placed those grounds before the Magistrate Judge, including that a clause "induced by fraud or overreach" will not be enforced. (ECF 14 at ¶ 5.)

17. The affirmative acceptance on which CELEBRITY's motion depends, the online check-in through which the Ticket Contract was accepted, occurred on October 11, 2024. (ECF 11-1 at ¶¶ 29-30.) On the date Ms. GILBERT is said to have agreed to litigate her personal-injury claims in England, rejecting the contract would have cost her three quarters of her fare. Fifteen days later it would have cost all of it.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

18. CELEBRITY argues that notices directing the reader to a website were transmitted to Ms. GILBERT's travel agent in March, April, and August of 2024, and that a cancellation more than 90 days before sailing would have forfeited only the deposit. ECF 11-1, Ex. "A" ¶ 8; Ex. "B." That may be so, but it does not alter the fact that the acceptance on which the entire motion rests was obtained at a point when rejection was no longer free.

19. Ms. GILBERT asks this Court to weigh, as part of the reasonableness inquiry her Response placed at issue and the Amended R&R did not reach, that a Canadian passenger was directed to an English forum by a form term she could no longer decline without substantial cost, in a dispute to which that forum bears no relation.

**Objection 3: The Record Does Not Establish What Remedy Is Available Under the Chosen Law**

20. Ms. GILBERT does not contend that a foreign forum becomes inadequate merely because its remedies are less generous than those available here. The Eleventh Circuit has recognized that, while the application of a damages limitation, standing alone, does not necessarily deprive a plaintiff of a remedy, "there may be a point at which a reduced recovery dictated by the law of a chosen forum is so low relative to the plaintiff's damages as to render the choice of forum fundamentally unfair." *Lebedinsky*, 789 F. App'x at 203.

21. The present record raises that question without answering it. Section 12.d of the Ticket Contract conditions two liability-limiting regimes on the voyage's ports. EU Regulation 392/2009 applies only to voyages that embark or disembark at a port of a European Union member state and do not embark, disembark, or call at any U.S. port. The Athens Convention applies only to cruises that do not embark or disembark at either an EU or a U.S. port and call at no U.S. port. (ECF 11-1, Ex. "A" § 12.d.) This voyage embarked and disembarked at Fort Lauderdale. Neither of the contractual limitation provisions CELEBRITY drafted is expressly triggered by this voyage.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

Whether an English court would nonetheless apply the Athens Convention, or any other limitation, as a matter of English law, and what Ms. GILBERT could recover if it did, is an open question. CELEBRITY's English-law declarant does not address it. *See* ECF 11-9. *Lipcon v. Underwriters at Lloyd's,* 148 F.3d 1285, 1297-98 (11th Cir. 1998) addressed the adequacy of English remedies for the specific claims before it. No comparable inquiry has been undertaken here for Ms. GILBERT's maritime personal-injury claim.

**<u>Objection 4: The Amended R&R Ended Its Analysis Without Weighing the Public-Interest Factors, and the Practical Obstacles It Deemed Waived Bear on Enforceability</u>**

22. Ms. GILBERT does not dispute that *Atlantic Marine* directs a court to deem the private-interest factors to weigh entirely in favor of a validly selected forum. 571 U.S. at 64. That rule leaves the public-interest factors for the court's consideration. *Id*. The Amended R&R identified those factors but did not apply them, observing instead that Ms. GILBERT "has not set forth any public interest factors for the Court's consideration," and that "the Court's analysis ends here." Amended R&R at 7.

23. Rule 72(b)(3) commits that question to this Court's *de novo* determination. Ms. GILBERT sets the factors out now, each drawn from the record already before the Court. The relevant factors are "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 63.

24. This voyage embarked from and returned to Fort Lauderdale. (ECF 11-3). CELEBRITY's principal office is in Florida. (ECF 11-1 at ¶ 4). The inspection and housekeeping practices Ms. GILBERT challenges, and the personnel who set and carried them out, are connected to this District. England and Wales has no comparable stake: no party resides there, no part of the voyage touched it, and none of the conduct at issue occurred there. This factor asks which


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

sovereign has a stake in adjudicating this controversy, and only one does. The forum at home with the law. The Ticket Contract designates English law, and this factor favors CELEBRITY. It is the only public-interest factor pointing to England and Wales, and it does not carry the analysis by itself.

25. Enforcement would place before the courts of England and Wales a dispute that neither party's domicile, nor the voyage, nor the injury situates there, burdening a foreign docket with a controversy having no connection to that forum, while the District with the actual local interest declines one it is already positioned to try.

26. The practical realities of transatlantic litigation bear on a question the Amended R&R did not reach: whether this clause is enforceable at all under *Bremen*, as set forth in Objection 1. Refiling in England and Wales would require Ms. GILBERT's counsel to retain and coordinate with English counsel, who would then have to rely on English discovery procedures to obtain evidence from CELEBRITY's corporate representatives and other witnesses located in Florida or elsewhere in the United States. Any inspection of the vessel, or of the area where Ms. GILBERT fell, would occur where the *Celebrity Eclipse* calls, not in England. Her treating physicians and medical records are in North America. To present even her own testimony, Ms. GILBERT would have to travel in person across the Atlantic, incurring the associated air travel and hotel costs and visa procedures, or accept a fully remote proceeding in which she and every other witness testifies exclusively by videoconference or video deposition, never appearing before the judicial officer deciding her case. *Cf.* Fed. R. Civ. P. 43(a) ("At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise," subject to exceptions for "good cause" "in compelling circumstances").


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

27. To the extent these circumstances bear on the *Atlantic Marine* balancing, Ms. GILBERT presents them as bearing on the antecedent *Bremen* inquiry, which the Amended R&R did not undertake, and preserves them for review.

**Objection 5: Any Dismissal Should Be Expressly Conditioned and Subject to Reinstatement**

28. Should this Court overrule the foregoing objections, Ms. GILBERT objects to the form of the recommended disposition. CELEBRITY has represented that it consents to the litigation proceeding in England and Wales, including service of process; that it will not object to jurisdiction, venue, or to any part of a hearing being conducted remotely, including the provision of fact and expert witness evidence; and that it will waive any statute-of-limitations defense provided Ms. GILBERT refiles within six months of an order granting the Motion. (ECF 11 at 19; ECF 11-1 at ¶ 47; ECF 11-9 at ¶ 38). The Amended R&R recommends dismissal without prejudice but does not recite any of those conditions. Amended R&R at 1 n.1, 8.

29. The need for conditions is concrete. The Ticket Contract requires that suit be commenced within one year of the date of injury (ECF 11-1 at ¶ 39), and the alleged injury occurred on November 27, 2024. A dismissal that is nominally without prejudice, but that leaves CELEBRITY free to assert a limitations bar abroad, would in practical effect be a dismissal with prejudice.

30. The Eleventh Circuit has addressed this precise situation. In *Leon v. Millon Air, Inc.*, 251 F.3d 1305 (11th Cir. 2001), the district court dismissed on *forum non conveniens* grounds without reciting the conditions to which the defendants had agreed. The Court of Appeals modified the order to include those conditions, and further modified it to provide that a case dismissed under the order may be reinstated if the foreign court finally rejects jurisdiction; it also explained that conditioning the dismissal in this manner does not destroy the order's finality or leave the case


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

pending in the district court. *Id*. at 1316. Ms. GILBERT respectfully requests that any dismissal be expressly conditioned upon each of CELEBRITY's representations, together with a stipulation as to the applicability or inapplicability of the limitation regimes identified in Section 12.d of the Ticket Contract, and that the order provide for reinstatement in this Court should the courts of England and Wales decline jurisdiction or should those conditions not be honored.

## Conclusion

**WHEREFORE**, Plaintiff, LISE GILBERT, respectfully requests that the Court sustain these objections; determine *de novo* whether enforcement of the forum-selection clause would unfairly deprive her of an effective remedy and her day in court; decline to adopt the Amended Report and Recommendations; and deny Defendant's Motion to Dismiss. In the alternative, Ms. GILBERT respectfully requests that the Court receive further evidence pursuant to Rule 72(b)(3); return the matter to the Magistrate Judge with instructions to address enforceability and the public-interest factors in the first instance; or modify the recommended disposition to condition any dismissal and provide for reinstatement as set forth in Objection 5, together with such further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed through the CM/ECF of the Court on August 28, 2026, and served upon all parties and/or counsel of record identified in the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

***/s/ Ahava Livingstone***
Ahava Livingstone, Esq.
Florida Bar No. 1069934
alivingstone@gslawusa.com

filing@gslawusa.com
**GERSON & SCHWARTZ, P.A.**
Attorneys for Plaintiff
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000
Facsimile: (305) 371-5749

**SERVICE LIST**

**LISE GILBERT v. CELEBRITY CRUISES, INC.**
**CASE NO.: 25-cv-25500-KMW**

| | |
|---|---|
| **Philip M. Gerson, Esq.**<br>Florida Bar No. 127290<br>pgerson@gslawusa.com<br>filing@gslawusa.com<br>**Nicholas I. Gerson, Esq.**<br>Florida Bar No. 20899<br>ngerson@gslawusa.com<br>**Edward S. Schwartz, Esq.**<br>Florida Bar No. 346721<br>eschwartz@gslawusa.com<br>**David L. Markel, Esq.**<br>Florida Bar No. 78306<br>dmarkel@gslawusa.com<br>**Nicholas M. Plymale, Esq.**<br>Florida Bar No. 1057884<br>nplymale@gslawusa.com<br>Ahava Livingstone, Esq.<br>Florida Bar No. 1069934<br>alivingstone@gslawusa.com<br>**GERSON & SCHWARTZ, P.A.**<br>1980 Coral Way<br>Miami, Florida 33145<br>Telephone:(305) 371-6000<br>Facsimile:(305) 371-5749<br>***Attorneys for Plaintiff*** | **Jerry D. Hamilton, Esq.**<br>Florida Bar No. 970700<br>jhamilton@hamiltonmillerlaw.com<br>**William F. Clair, Esq.**<br>Florida Bar No.: 693741<br>Wclair@hamiltonmillerlaw.com<br>**Douglas K. Scheller, Esq.**<br>Florida Bar No.: 1047851<br>dscheller@hamiltonmillerlaw.com<br>**Hamilton, Miller & Birthisel, LLP**<br>150 Southeast Second Avenue, Suite 1200<br>Miami, Florida 33131-2332<br>Telephone: 305-379-3686<br>Facsimile: 305-379-3690<br>***Attorneys for Defendant*** |