**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 25-cv-25500-KMW**

LISE GILBERT,
a citizen and resident of Canada,

Plaintiff,

v.

CELEBRITY CRUISES, INC., a
Liberian Corporation,

Defendant.
_________________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE AMENDED REPORT AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS**

Defendant, CELEBRITY CRUISES, INC. ("Celebrity"), by and through undersigned counsel, respectfully submits this Response to Plaintiff's Objections to the Amended Report and Recommendations on Motion to Dismiss (ECF No. 30) ("Objections"), addressing the Amended Report and Recommendations entered August 21, 2026 (ECF No. 28) ("Amended R&R") concerning Celebrity's Motion to Dismiss (ECF No. 11) ("Motion"), and states as follows:

## INTRODUCTION

The Amended R&R reached the result compelled by the undisputed record and controlling law. Plaintiff did not dispute in her Opposition that she, through her authorized travel agent, affirmatively accepted the Ticket Contract; did not challenge the reasonable communication of its terms or the validity of the forum-selection clause on any formation-based ground; and conceded that the courts of England and Wales are competent to adjudicate civil disputes. Instead, Plaintiff opposed enforcement principally because litigating in England would require transatlantic travel or remote participation. Those are precisely the types of foreseeable inconvenience that cannot overcome an otherwise valid forum-selection clause. Magistrate Judge Lett therefore correctly recommended dismissal.

Plaintiff's Objections do not identify any error warranting rejection of that recommendation. Rather, they substantially recast and supplement, after the fact, the abbreviated arguments Plaintiff chose to present in opposition to the Motion. Objection One correctly observes that enforceability under *The Bremen* precedes application of *Atlantic Marine*'s modified forum non conveniens analysis, but that analytical sequencing does not alter the result. On *de novo* review, the same undisputed record establishes that the forum-selection clause is enforceable under *The Bremen* and its progeny. Once enforceability is established, *Atlantic Marine* requires the Court to deem the private-interest factors entirely in favor of the contractually selected forum, and Objection Four identifies no public-interest considerations sufficient to present the exceptional circumstances necessary to overcome the parties' contractual choice.

Objections Two and Three fare no better. Objection Two attempts to convert the absence of a factual connection between this particular casualty and England and Wales, together with ordinary litigation inconvenience, into a basis for invalidating the clause. Neither *The Bremen* nor Eleventh Circuit precedent imposes such a requirement. It also advances a new theory that Plaintiff lacked a meaningful opportunity to reject the Ticket Contract because cancellation charges had attached by the date of online check-in, notwithstanding the undisputed evidence that Plaintiff, through her travel



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

agent received repeated notice of the Ticket Contract months earlier and before any percentage-based cancellation charge attached. That chronology does not establish overreaching or fundamental unfairness. Objection Three likewise raises a substantive-remedy theory Plaintiff never developed in her Opposition and rests on speculation concerning limitations that, by Plaintiff's own account, are not expressly triggered by this voyage.

Objection Five presents no basis to deny dismissal. It principally asks the Court to incorporate into its order the jurisdictional and limitations representations Celebrity voluntarily made in support of its Motion. Celebrity does not oppose incorporation of those representations, while preserving its position that Plaintiff is not entitled to additional substantive concessions concerning the law or limitations that an English court may ultimately apply.

Celebrity therefore respectfully requests that the Court overrule Objections One through Four, adopt the Amended R&R's recommendation that the Motion to Dismiss be granted, and modify the dismissal order only to the limited extent addressed in response to Objection Five.

## STANDARD OF REVIEW

A district judge reviews *de novo* those portions of a magistrate judge's report to which a specific objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (cleaned up). The objections must also present "supporting legal authority." S.D. Fla. Mag. J. R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a de novo determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783-84 (citation and quotations omitted) (cleaned up). Celebrity does not dispute that the portions of the Amended R&R to which Plaintiff specifically objects are subject to *de novo* review. That standard, however, does not require the Court to consider distinct arguments first presented in objections that were not raised before the Magistrate Judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). As shown below, that review should confirm the Amended R&R's recommendation rather than undermining it.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## ARGUMENT

For organizational clarity, each Roman-numeral section below corresponds to the similarly numbered objection asserted in Plaintiff's Objections. *See* ECF No. 30.

### I. **The Record Independently Establishes the Enforceability of the Forum-Selection Clause Under *The Bremen*.**

Plaintiff is correct as a matter of analytical sequence that *Atlantic Marine*'s modified forum non conveniens analysis presupposes a contractually valid forum-selection clause and does not itself establish enforceability. *See Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 62 n.5 (2013); *see also AQuate II, LLC v. Myers,* 100 F.4th 1316, 1323-24 (11th Cir. 2024); *Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1345, 1348 (11th Cir. 2021). As *AQuate II* confirms, the enforceability inquiry under *The Bremen* precedes application of *Atlantic Marine*'s modified forum non conveniens framework. 100 F.4th at 1323-24. But that observation does not undermine the Amended R&R's ultimate recommendation. Applying *The Bremen* directly to the record establishes that the forum-selection clause is enforceable, and Plaintiff's Objections do not supply the showing that was absent from her Opposition.

Under federal maritime law, forum-selection clauses "are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Turner*, 9 F.4th at 1345 (citation and quotations omitted). A plaintiff may overcome that presumption by showing that: (1) the clause was induced by fraud or overreaching; (2) the plaintiff would be deprived of her day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement would contravene public policy. *Id.*; *Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 200 (11th Cir. 2019); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–18 (1972) (source of the enforceability principles to overcome presumption, subsequently organized into these four grounds). These four numbered grounds are referred to herein as the "*Bremen* grounds." As *AQuate II* recently confirmed, they "will rarely invalidate a forum-selection clause[.]" 100 F.4th at 1323.

Although Plaintiff's Opposition recited the four *Bremen* grounds generally, she did not develop the first, third, or fourth as grounds for denying Celebrity's Motion. *See* ECF No. 14 ¶ 5. Plaintiff did not argue that the forum-selection clause was procured through fraud or overreaching, did not contend that the chosen law would deprive her of a remedy, and did not identify any public



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

policy that enforcement would contravene. *See id.* ¶¶ 5-9. Nor did Plaintiff dispute her acceptance of the Ticket Contract or challenge the reasonable communication of its forum-selection provision. *Id.* The Amended R&R therefore correctly recognized that those matters were not disputed on the record presented to the Magistrate Judge. *See* Amended R&R at 7 n.4.

Plaintiff's Objections now characterize her Opposition as having "*invoked those grounds*," but that characterization conflates recitation of the governing standard with development of an argument under each ground. *See* Objections ¶¶ 8-9. The substantive argument that followed Plaintiff's recitation addressed inconvenience and unfairness: the relationship between England and Wales and a Canadian Plaintiff, her preference to present her case in person, the burdens of transatlantic litigation, and her resulting contention that enforcement would deprive her of an effective remedy and her day in court. *See* ECF No. 14 ¶¶ 6-9. That argument implicates the second *Bremen* ground concerning inconvenience and unfairness, not the distinct third ground concerning whether the chosen law would deprive her of a remedy.

Even where "the forum selection clause establishes a remote forum," a plaintiff challenging enforcement on grounds of inconvenience or unfairness bears a "heavy burden of proof." *Turner*, 9 F.4th at 1345-46 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991)). Where the asserted inconveniences were "foreseeable at the time of contracting," the plaintiff must show "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 1346 (quoting *The Bremen*, 407 U.S. at 17-18).

*Turner* is particularly instructive. There, a Wisconsin passenger whose cruise departed from Fort Lauderdale challenged a ticket provision requiring litigation in Genoa, Italy. *Id.* at 1343-44. The plaintiff argued, among other things, that requiring him and other passengers to travel to Italy during the COVID-19 pandemic would expose them to significant health risks and that those risks were unforeseeable when they contracted. *Id.* at 1346. Even assuming the asserted COVID-related travel risks were less foreseeable than the medical difficulties ordinarily associated with personal injuries, the Eleventh Circuit held that the plaintiff failed to establish fundamental unfairness because he had not shown that he would actually have to travel to Italy to pursue his claims. *Id.* The defendants had submitted an Italian attorney's affidavit explaining alternatives to personal attendance, while the plaintiff submitted no declaration or other evidence contradicting those representations. *Id.* The Eleventh Circuit emphasized that its holding rested on that


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

evidentiary record and concluded that the plaintiff had not satisfied his heavy burden of unfairness. *Id.*

The same reasoning applies with even greater force here. Plaintiff submitted no declaration establishing that she is unable to litigate in England and Wales, identified no witness who could not participate or testify remotely, and offered no evidentiary showing of financial, medical, or other hardship that would effectively prevent her from pursuing her claim there. Instead, her Opposition relied principally on the burden of transatlantic travel and her preference to present her case in person rather than remotely. *See* ECF No. 14 ¶¶ 6–9 (As a Canadian resident, however, Plaintiff necessarily faces international travel to litigate in either Florida or the contractually selected forum.). Those generalized concerns fall well short of demonstrating that Plaintiff would, "for all practical purposes," be deprived of her day in court. *See Turner*, 9 F.4th at 1346; *The Bremen*, 407 U.S. at 17-18.

Indeed, the record here directly addresses the concern Plaintiff raised. Celebrity expressly consented to jurisdiction and venue in England and Wales and represented that it would not object to Plaintiff requesting that hearings be conducted remotely or that fact and expert witnesses testify remotely. *See* ECF No. 11-1 ¶ 47. Celebrity also submitted evidence that English procedure permits testimony by video link. *See* Civil Procedure Rules r. 32.3 (ECF No. 11-9, Ex. E); Practice Direction 32, Annex 3 (ECF No. 11-9, Ex. F). Celebrity further agreed to waive any limitations defense if Plaintiff refiles in England and Wales within six months following dismissal. *See* ECF No. 11-1 ¶ 47; ECF No. 11-9 ¶ 38. Thus, as in *Turner*, Plaintiff has offered no evidence rebutting the record concerning her ability to pursue the action in the selected forum. *See Turner,* 9 F.4th at 1346.

Plaintiff's reliance on *Greco v. NFL*, No. 3:13-CV-1005-M-BK, 2017 WL 11679599, at *5 (N.D. Tex. Mar. 30, 2017) in her Opposition does not alter that conclusion. *Greco* did not address the enforceability of a contractual forum-selection clause under *The Bremen*. More importantly, *Turner* squarely addresses the relevant question and rejects the premise that a plaintiff must necessarily appear personally in the selected foreign forum to receive her "day in court." 9 F.4th at 1346 (citing *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995) ("A plaintiff may have his 'day in court' without ever setting foot in a courtroom.")). Plaintiff's preference for in-person proceedings therefore does not establish the grave difficulty and inconvenience necessary to render the forum-selection clause unenforceable.



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Accordingly, Plaintiff's objection to the sequence of the Amended R&R's analysis does not alter the result. The enforceability inquiry required by *AQuate II* and *The Bremen* can be resolved on the existing record, which establishes that the forum-selection clause is enforceable. *See AQuate II*, 100 F.4th at 1323-24. Once that determination is made, *Atlantic Marine* requires Plaintiff's choice of forum to receive no weight and the private-interest factors to be treated as favoring the contractually selected forum. *See Turner*, 9 F.4th at 1347-48. The Amended R&R's ultimate recommendation therefore remains correct.

**II. *The Bremen*'s Reference to a "Remote Alien Forum" Does Not Establish the Nexus Requirement Plaintiff Proposes, and the Record Does Not Support Plaintiff's Newly Asserted Overreaching Theory.**

Objection Two places dispositive weight on *The Bremen*'s reference to a "remote alien forum" that the Supreme Court itself did not assign to that language. The phrase appears as a hypothetical illustration within the Court's discussion of whether serious inconvenience can render enforcement of a forum-selection clause unreasonable. The Court explained that it was "not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum." *The Bremen*, 407 U.S. at 17. In such a hypothetical case, the Court observed, serious inconvenience "might carry greater weight" and remoteness "might suggest" that the agreement was adhesive or that the parties did not contemplate the particular controversy. *Id.* But the Court immediately returned to the governing burden, emphasizing that "even there the party claiming should bear a heavy burden of proof." *Id.* The Court then articulated the controlling standard: the resisting party must show that trial in the selected forum would be "so gravely difficult and inconvenient" that she would, "for all practical purposes," be deprived of her day in court. *Id.* at 18.

Plaintiff's reliance on that hypothetical is particularly misplaced because its factual premise bears little resemblance to this case. This is not a dispute between "two Americans," nor is it "essentially local." Plaintiff is a Canadian national domiciled in Canada. ECF No. 11 at 2; ECF No. 11-1 ¶ 24; Compl. ¶2. Celebrity is a Liberian corporation with its principal office in Florida and a subsidiary office in England and Wales. ECF No. 11 at 2; ECF No. 11-1 ¶ 4. The *Celebrity Eclipse* is a Malta-flagged vessel owned by another Liberian corporation, and Plaintiff's alleged injury occurred while the vessel was in navigable waters in the Southern Caribbean, not in Florida. ECF No. 11 at 2, 17; ECF No. 11-1 ¶ 4; Compl. ¶¶ 4, 10-13. The parties' contract is likewise



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

international in character: because Plaintiff's primary country of residence is Canada, the applicable Canadian Ticket Contract expressly selects the courts of England and Wales as the exclusive forum and English law as the governing law. ECF No. 11 at 6-8; ECF No. 11-1 ¶¶ 38-39, Ex. 1-A.

Those circumstances matter because *The Bremen*'s "remote alien forum" discussion concerned the possibility that parties to an essentially domestic dispute might select a foreign forum so disconnected from their controversy that the selection itself could bear on whether enforcement was unreasonable. 407 U.S. at 17. This case presents the opposite circumstance: a Canadian passenger asserting a maritime claim against a Liberian cruise line arising from an alleged injury at sea aboard a Malta-flagged vessel, under a passenger contract applicable specifically to Canadian residents that selects both an English forum and English law. Celebrity also maintains a subsidiary office in England and Wales. ECF No. 11 at 2; ECF No. 11-1 ¶ 4. The fact that Celebrity also maintains its principal office in Florida does not transform that international maritime dispute into the "essentially local" controversy contemplated by *The Bremen*'s hypothetical, or the theory advanced by Plaintiff.

The broader context of *The Bremen* confirms the point. There, the Fifth Circuit had relied on many of the same considerations Plaintiff emphasizes here, including that the casualty occurred near the American forum, relevant witnesses and work were located in the Gulf Coast area, and "England had no interest in or contact with the controversy other than the forum-selection clause." *Id.* at 7-8. The Supreme Court nevertheless concluded that the lower courts had given "far too little weight and effect" to the contractual forum provision. *Id.* at 8. It explained that, absent the contractual forum, those considerations might support the convenience of an American forum, but they did not justify disregarding the parties' contractual selection. *Id.* at 8-9.

The Eleventh Circuit likewise does not treat geographic remoteness as a separate threshold bar to enforcement. As *Turner* explains, "[e]ven when the forum selection clause establishes a remote forum," the resisting party continues to bear *The Bremen*'s "heavy burden of proof." 9 F.4th at 1346 (citation and quotations omitted). And the maritime passenger cases demonstrate that an international forum-selection clause is not unenforceable merely because the passenger, accident, or voyage has connections elsewhere. *See Seung v. Regent Seven Seas Cruises, Inc.*, 393 F. App'x 647, 649–50 (11th Cir. 2010) (enforcing Paris forum clause against California passenger for cruise in French Polynesia); *see also Turner*, 9 F.4th at 1347-48. Indeed, *Shute* recognized that



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

because cruise ships "typically carr[y] passengers from many locales," cruise lines have a legitimate interest in establishing in advance a forum and eliminating confusion over where disputes will be litigated. *Shute*, 499 U.S. at 593-94. Thus, whether Plaintiff labels England and Wales "remote" does not alter the governing inquiry. She must still carry the heavy burden of establishing that enforcement would be unreasonable or fundamentally unfair. She has not.

Plaintiff's newly asserted theory concerning the timing of acceptance and cancellation penalties fares no better. Plaintiff now relies on those circumstances both as alleged evidence of overreaching and as part of her broader contention that enforcement would be unreasonable. Importantly, Plaintiff did not argue in her Opposition that the forum-selection clause was the product of overreaching because cancellation penalties had attached by the time of her October 11, 2024 online check-in. Although her Opposition recited fraud or overreaching as one of the four grounds for non-enforcement, ECF No. 14 ¶ 5, it did not develop any argument based on the timing of acceptance, Celebrity's cancellation schedule, or an inability to reject the Ticket Contract without forfeiting a portion of the cruise fare. *See id.* ¶¶ 5-9. The Court therefore has discretion to decline to consider that distinct argument when raised for the first time in Plaintiff's Objections. *See Williams*, 557 F.3d at 1292. Nor do Plaintiff's Objections identify any authority holding that the existence of cancellation charges at the time of affirmative acceptance, without more, renders a previously communicated forum-selection clause the product of overreaching or otherwise fundamentally unfair. As the record demonstrates, the timing of the cancellation charges here does not support either conclusion.

In any event, the record does not support the premise that Plaintiff first received notice of the forum-selection provision only after substantial cancellation penalties had attached. The subject cruise was a 10-night sailing departing November 25, 2024. The Ticket Contract provides that, for cruises of 5-14 nights, cancellation 90 or more days before sailing carries no cancellation charge other than any non-refundable deposit, while cancellation 89-75 days before sailing carries a 25% charge, 74-61 days a 50% charge, 60-31 days a 75% charge, and 30 days or less a 100% charge. *See* ECF No. 11-2 § 8(b) (the applicable Ticket Contract). Accordingly, for Plaintiff's November 25 sailing, the percentage-based cancellation charges began on August 28, 2024 at 25%, increased to 50% on September 12, 2024, to 75% on September 26, 2024, and to 100% on October 26, 2024. *See* ECF No. 11-4, "Cancellation Schedule" (dates expressly outlined and recite for passenger reference). Before the first of those percentage-based cancellation charges took effect,


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

however, Celebrity had already transmitted booking confirmations to Plaintiff's Travel Agent on March 17, April 19, and August 6, 2024, directing Plaintiff to the Ticket Contract and expressly advising that it contained provisions concerning "forum selection" and "governing law." *See* ECF No. 11 at 2-3, 11-13; ECF No. 11-1 ¶¶ 25-28; Exs. 1-B, 1-C; *see also* ECF No. 11, § III.B.2 (collecting authority establishing that receipt of cruise-contract materials by a passenger's travel agent imputes notice of those terms to the passenger).

The August 6 confirmation is particularly significant. It was transmitted more than three weeks before the first percentage-based cancellation charge took effect on August 28, and it expressly set out the cancellation schedule itself. *See* ECF No. 11-4 at 6 (bottom of the Booking Confirmation page). The confirmation identifies the 25%, 50%, 75%, and 100% cancellation charges had not yet taken effect. *Id.* Thus, while Plaintiff correctly observes that a 75% cancellation charge applied by the time her Travel Agent affirmatively accepted the Ticket Contract during online check-in on October 11, that date was not Plaintiff's first notice of the Ticket Contract or its forum-selection provision. Nor was it the first opportunity to review the terms and decide whether to proceed with the booking and passage.

Plaintiff's focus on October 11 therefore conflates affirmative electronic acceptance with reasonable communication of the contractual terms. The record reflects that the forum-selection and governing-law provisions were repeatedly called to Plaintiff's attention through her Travel Agent months before online check-in and, critically, before any percentage-based cancellation charge attached. *See* ECF No. 11-1 ¶¶ 25-30. Plaintiff does not identify any evidence that she or her Travel Agent attempted to review or reject the forum provision during that period, objected to it, or contacted Celebrity concerning the Ticket Contract. *See id.* ¶¶ 43-45. Against that record, Plaintiff cannot transform the later date of affirmative electronic acceptance into evidence of overreaching or fundamental unfairness merely because the cancellation schedule had progressed to 75% by that time. The dispositive chronology is that the forum-selection provision was reasonably communicated months earlier, including while Plaintiff remained outside the percentage-based cancellation period, affording her the opportunity to review the terms before those charges attached. Plaintiff identifies no authority treating a later financial consequence of cancellation, under circumstances where the challenged term was reasonably communicated beforehand, as sufficient to establish overreaching or fundamental unfairness under *The Bremen*.



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

**III. Plaintiff Did Not Raise Below, and Has Not Shown, That English Law Would Deprive Her of a Remedy.**

Objection Three presents a theory Plaintiff did not raise in her Opposition briefing before the Magistrate Judge. Although Plaintiff's Opposition recited as part of the governing standard that a forum-selection clause may be invalidated where "the chosen law would deprive the plaintiff of a remedy," ECF No. 14 ¶ 5, she did not develop that ground as a basis for denying Celebrity's Motion. *See id.* ¶¶ 6-9. Plaintiff did not argue that English law would deprive her of a cause of action or remedy, invoke the Athens Convention or EU Regulation 392/2009, identify any limitation on recovery that an English court might apply, or otherwise challenge Celebrity's unrebutted evidence concerning the remedies available under English law. *Id.* Instead, the argument that followed her recitation of *The Bremen* standard concerned the practical burdens of litigating in England and Wales and her contention that those burdens would deprive her of "an effective remedy and her day in court." *Id.* That argument implicated the second *Bremen* ground, concerning inconvenience or unfairness, not the distinct third ground concerning whether the chosen law would deprive her of a remedy.

The Court may decline to consider that distinct theory when raised for the first time in Plaintiff's Objections. The Eleventh Circuit has held that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams*, 557 F.3d at 1292. Applying *Williams*, *American Home Assurance Co. v. Weaver Aggregate Transportation, Inc.*, 89 F. Supp. 3d 1294, 1300 (M.D. Fla. 2015), declined to entertain arguments first developed in objections where the relevant issue had been before the magistrate judge but the party had chosen not to address those arguments in its original response. The court rejected the party's explanation that it had elected to focus on a different issue as reflecting a "tactical decision," reasoning that a litigant is not entitled to "a second, and much larger, bite at the apple" through objections to the R&R. *Id.*

The same principle applies here. Celebrity's Motion expressly addressed the third *Bremen* ground and submitted an English-law declaration establishing that Plaintiff could pursue her negligence claims in England and Wales and recover pecuniary and non-pecuniary damages if successful. ECF No. 11 at 17–18; ECF No. 11-9 ¶¶ 24-25. Plaintiff therefore had both the issue and Celebrity's supporting evidence squarely before her when she filed her Opposition yet chose not to develop any argument that English law would deprive her of a remedy. Her Objections


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

should not provide an opportunity to do so for the first time. *See Williams*, 557 F.3d at 1292; *Am. Home Assurance*, 89 F. Supp. 3d at 1300.

Even if the Court exercises its discretion to consider Plaintiff's newly developed theory, it fails on the merits under *Lebedinsky*. There, the passenger specifically argued that application of the Athens Convention would deprive her of a remedy because she alleged approximately $750,000 in damages while the Convention appeared to limit her recovery to approximately $64,000. *Lebedinsky*, 789 F. App'x at 202-03. The Eleventh Circuit assumed, without deciding, that the Athens Convention applied and nevertheless rejected the argument. *Id.* The court explained that "the potential for decreased recovery is not the same as no remedy," and reiterated that a forum-selection clause is not invalid "simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Id.* at 203 (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998)). Rather, the available remedies must be "so inadequate that enforcement would be fundamentally unfair." *Id.*

*Lebedinsky* therefore rejected a substantially more developed deprivation-of-remedy argument than Plaintiff presents here. The plaintiff there identified the allegedly applicable liability regime, identified the resulting limitation on recovery, identified her claimed damages, and demonstrated a substantial disparity between the two. *Id.* at 202-03. Even on that record, the Eleventh Circuit held that the potential reduction did not establish fundamental unfairness. *Id.* Although the court recognized that there "may be a point at which the disparity between a plaintiff's potential recovery in the chosen forum and her potential recovery in the United States is so great that the remedy in the chosen forum becomes fundamentally unfair," it expressly held that the approximately $64,000 potential recovery before it was not such a case. *Id.* at 203.

Plaintiff makes no comparable showing here. She does not establish that either EU Regulation 392/2009 or the Athens Convention applies to her claim, identify the amount of any limitation an English court would impose, quantify the recovery supposedly available to her under that limitation, or compare that amount to her claimed damages. Instead, Objection Three raises uncertainty as to what substantive limitation, if any, an English court might ultimately apply. That speculation falls well short of the showing rejected in *Lebedinsky*, much less Plaintiff's burden to demonstrate that the chosen law would deprive her of an actual remedy.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

The existing record affirmatively points the other way. Celebrity submitted the declaration of English barrister Gareth Thomas, who explained that Plaintiff's claims "could be brought pursuant to English law in the courts of England and Wales under the tort of negligence." ECF No. 11-9 ¶ 24. Thomas further explained that, upon establishing the elements of negligence, Plaintiff "would in principle be entitled to recover damages including pecuniary and non-pecuniary damages, to be assessed in accordance with English law principles." *Id.* ¶ 25. Plaintiff submitted no contrary English-law evidence in her Opposition to the Motion and did not challenge Thomas's conclusions concerning the availability of a negligence claim and damages in England and Wales.

Plaintiff's new reliance on the Ticket Contract's liability provisions does not establish otherwise. Section 12(d) identifies the circumstances under which the contractual liability limitations and immunities associated with EU Regulation 392/2009 and the Athens Convention apply. Plaintiff emphasizes that her voyage embarked and disembarked in the United States and questions whether those provisions apply to her voyage at all. But that contention does not establish that English law would deprive her of a remedy. If anything, Plaintiff's uncertainty as to whether the identified limitations apply underscores the speculative nature of her argument. And even assuming some limitation ultimately applies, *Lebedinsky* establishes that the mere prospect of reduced recovery is insufficient; the resulting remedy must be so inadequate that enforcement would be fundamentally unfair. 789 F. App'x at 203. Plaintiff has made no such showing.

Nor is the Court required, at the forum-enforcement stage, to resolve every question of English substantive law that might ultimately bear on the measure of Plaintiff's recovery. *Lebedinsky* itself assumed the Athens Convention applied without deciding that question and proceeded to determine whether the resulting remedy was so inadequate as to render enforcement fundamentally unfair. *Id.* at 202-03. Here, the Court need not speculate about which, if any, limitation an English court might apply where Plaintiff has not established that any such limitation would deprive her of a meaningful remedy. On the record before the Court, Plaintiff may pursue a negligence claim in England and Wales and recover pecuniary and non-pecuniary damages if successful. Her newly raised speculation concerning a possible limitation on the amount of that recovery does not satisfy the third *Bremen* ground.

## IV. <u>The Public-Interest Factors Do Not Present the Exceptional Circumstances Necessary to Override the Parties' Forum-Selection Clause.</u>


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Objection Four presents yet another argument Plaintiff did not raise before the Magistrate Judge. Plaintiff's Opposition identified no public-interest factor weighing against dismissal. *See generally* ECF No. 14. The Amended R&R accordingly observed that "Plaintiff has not set forth any public interest factors for the Court's consideration" and concluded that, because such factors "rarely defeat" enforcement of a forum-selection clause, Plaintiff had presented no basis to depart from the parties' selected forum. Amended R&R at 7 (quoting *Atlantic Marine*, 571 U.S. at 64). Plaintiff now expressly acknowledges that she "sets the factors out now" in her Objections. Objections ¶ 23. As discussed above, the Court has discretion to decline to consider an argument not first presented to the Magistrate Judge. *See Williams*, 557 F.3d at 1292.

Even if the Court considers Plaintiff's newly developed public-interest arguments on *de novo* review, they do not alter the result. Once the forum-selection clause is determined to be enforceable, the ordinary forum non conveniens calculus changes substantially. The plaintiff's usual choice-of-forum preference "evaporates," the party defying the clause bears the burden of showing that the bargained-for forum is unwarranted, and the Court considers only public-interest factors, which "rarely defeat" enforcement. *AQuate II*, 100 F.4th at 1322-23 (quoting *Atlantic Marine*, 571 U.S. at 62-64). The private-interest factors are then deemed to weigh entirely in favor of the selected forum. *Turner*, 9 F.4th at 1348 (citing *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1029 (11th Cir. 2014)). The remaining public-interest factors "will rarely defeat" enforcement, such that "the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64. Indeed, a valid forum-selection clause should receive controlling weight "in all but the most exceptional cases." *Turner*, 9 F.4th at 1348 (quoting *Atlantic Marine*, 571 U.S. at 63).

The potentially relevant public-interest considerations include "the administrative difficulties flowing from court congestion," "the local interest in having localized controversies decided at home," the interest in having trial in a forum at home with the law governing the action, the avoidance of unnecessary problems involving conflicts or application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Turner*, 9 F.4th at 1348 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). A district court is not required to mechanically address every public-interest factor and may discuss only those relevant to the particular case. Id. at 1348–49 (citing *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1051 (11th Cir. 2019)).


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Plaintiff principally relies on Florida's local interest. She notes that the voyage embarked from and returned to Fort Lauderdale, Celebrity maintains its principal office in Florida, and the inspection and housekeeping practices she challenges *allegedly* have connections to this District. Objections ¶ 24. Those circumstances establish that Florida has a colorable interest in the dispute, but they do not make this an essentially localized Florida controversy. Plaintiff is a Canadian national domiciled in Canada. Celebrity is a Liberian corporation. The Celebrity Eclipse is a Malta-flagged vessel owned by another Liberian corporation. Plaintiff's alleged injury occurred at sea in the Southern Caribbean, not in Florida. Celebrity also maintains a subsidiary office in England and Wales. ECF No. 11 at 2, 17; ECF No. 11-1 ¶¶ 4, 24. The dispute is therefore international in character and connected to multiple jurisdictions. Florida's interest, while again colorable, does not by itself transform this international maritime dispute into the exceptional case necessary to override the parties' contractual choice of forum.

*Turner* is once again particularly instructive. There, the passenger was a Wisconsin resident, the cruise departed from Fort Lauderdale, and Costa Cruise Lines was based in Pembroke Pines, Florida. *Turner*, 9 F.4th at 1344, 1346 n.1. Nevertheless, the Eleventh Circuit affirmed dismissal in favor of the contractually selected Italian forum. *Id.* at 1348-49. In reviewing the public-interest analysis, the Eleventh Circuit approved the district court's consideration of the Southern District of Florida's busy docket, the United States' interest in ensuring its citizens access to an American forum, Italy's competing interest, the likely application of Italian law pursuant to the contract's choice-of-law provision, and the fact that key events occurred aboard the vessel rather than in Florida. *Id.* The court further held that, even assuming the asserted unfairness of burdening an allegedly unrelated Italian forum weighed in favor of retaining the case in Florida, that consideration did not render dismissal an abuse of discretion. *Id.*

The comparison to *Turner* is markedly significant here. Plaintiff is not a United States citizen seeking access to her domestic courts, but a Canadian citizen who contractually agreed that disputes would be litigated in England and Wales. The alleged injury likewise occurred aboard the vessel in navigable waters. And unlike a forum wholly disconnected from Celebrity, the unrebutted record establishes that Celebrity maintains a subsidiary office in England and Wales. ECF No. 11-1 ¶ 4. Thus, the Florida connections on which Plaintiff relies are not materially stronger than those the Eleventh Circuit found insufficient to disturb enforcement in *Turner*, while several considerations present here make the controversy more international in character.


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

The governing-law consideration weighs more directly toward the selected forum. The Ticket Contract expressly provides that disputes governed by the relevant provision are subject to English law. ECF No. 11-1, Ex. A § 10(a)(ii). English courts are necessarily at home with English law, and adjudication there avoids unnecessary issues associated with an American court applying foreign substantive law. *See Turner*, 9 F.4th at 1348-49 (approving consideration of "the likely need to apply Italian law based on the Contract's choice-of-law clause"). That consideration falls squarely within the public-interest factors recognized by *Piper* and *Atlantic Marine*. *See Atlantic Marine*, 571 U.S. at 62 n.6.

Nor does the court-congestion factor support Plaintiff's burden. Plaintiff identifies no comparative evidence concerning the relative congestion of this District and the courts of England and Wales. Her assertion that dismissal would "burden[] a foreign docket," Objections ¶ 25, does not establish that the English courts face greater administrative difficulty from this litigation than this Court would. To the extent congestion bears on the analysis at all, *Turner* is yet again instructive: the district court there considered the Southern District of Florida's busy docket but afforded that consideration little weight, and the Eleventh Circuit found the overall public-interest analysis persuasive. *Turner*, 9 F.4th at 1348-49.

Plaintiff's contention that England and Wales has "no comparable stake" in the controversy likewise overstates the record. Objections ¶ 24. The parties expressly selected England and Wales as the exclusive forum and English law as the governing law for disputes arising under Plaintiff's Ticket Contract. Celebrity also maintains a subsidiary office there. ECF No. 11-1 ¶ 4. More fundamentally, *Atlantic Marine* does not require the contractually selected forum to possess the greatest independent factual connection to the underlying accident. The modified analysis exists precisely because the parties have already exercised their contractual choice of forum, leaving Plaintiff with the burden of demonstrating that public-interest considerations overwhelmingly justify disregarding that choice. *See Atlantic Marine*, 571 U.S. at 63-64.

Several other considerations Plaintiff invokes are not public-interest factors at all. Her references to the location and availability of witnesses, treating physicians, documents, vessel inspection, discovery, travel expenses, and practical difficulties associated with presenting evidence concern access to sources of proof, witness attendance and cost, inspection of premises, and other practical problems affecting the ease and expense of litigation. Those are classic private-interest considerations. *See Atlantic Marine*, 571 U.S. at 62 n.6 ("Factors relating to the parties'



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'")). Once an enforceable forum-selection clause applies, the parties have waived the right to challenge the selected forum as inconvenient or less convenient for themselves, their witnesses, or their pursuit of the litigation, and those private interests must be deemed to favor the selected forum. *Id.* at 64; *Turner*, 9 F.4th at 1348. Plaintiff cannot convert those foreclosed private-interest considerations into public-interest factors merely by characterizing them as practical consequences of litigating abroad.

Accordingly, even considering the public-interest arguments Plaintiff raises for the first time in her Objections, the balance falls far short of the showing necessary to defeat the parties' forum-selection clause. Florida has some interest in the controversy, but the dispute is international in character; Plaintiff is Canadian; the incident occurred in navigable waters aboard a Malta-flagged vessel; Celebrity is a Liberian corporation with a subsidiary office in England and Wales; and the parties expressly selected both the courts of England and Wales and English law. Plaintiff offers no comparative evidence concerning court congestion, while the governing-law consideration favors adjudication in England and Wales. Her remaining concerns largely concern private interests that *Atlantic Marine* removes from the balance.

This is therefore not the exceptional case contemplated by *Atlantic Marine*. Public-interest considerations "will rarely defeat" enforcement of a valid forum-selection clause, and "[i]n all but the most unusual cases" the interest of justice is served by holding parties to their contractual choice. *Atlantic Marine*, 571 U.S. at 64, 66. Plaintiff has not identified public-interest considerations sufficient to overcome that rule. The Amended R&R's recommendation that the action be dismissed in favor of the parties' contractually selected forum should therefore be adopted.

## V. **Celebrity Does Not Oppose Incorporation of the Representations It Has Made, but No Additional Substantive-Law Condition Is Warranted.**

Celebrity does not oppose the Court incorporating into any dismissal order the representations Celebrity has already made in support of its Motion. Celebrity represented that it consents to this litigation proceeding in England and Wales, including service of process; will not object to jurisdiction or venue there; will not object to Plaintiff requesting that any part of a hearing


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

be conducted remotely, including the presentation of fact or expert witness evidence, as applicable; and will waive any statute-of-limitations defense it may have provided Plaintiff refiles the matter in the courts of England and Wales within six months of an order granting dismissal. ECF No. 11 at 19-20; ECF No. 11-1 ¶ 47; ECF No. 11-9 ¶ 38. Celebrity stands by those representations.

The Eleventh Circuit's decisions in *Leon v. Millon Air, Inc.*, 251 F.3d 1305 (11th Cir. 2001), and *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698 (11th Cir. 2018), support a distinction between incorporating conditions to which a defendant has already agreed and requiring additional protections that the defendant has not undertaken. In *Leon*, the defendants had previously agreed to four conditions concerning litigation in Ecuador, including accepting service and jurisdiction there and waiving statute-of-limitations defenses. 251 F.3d at 1308. When the district court dismissed on forum non conveniens grounds without expressly incorporating those agreed conditions, the Eleventh Circuit modified the dismissal order to include them. *Id.* at 1316.

*Hisey* subsequently addressed protective conditions in the context of a dismissal enforcing a contractual forum-selection clause. The plaintiff there asked the Eleventh Circuit to condition dismissal upon the defendants' waiver of a statute-of-limitations defense so that he could refile in Pennsylvania. *Hisey*, 753 F. App'x at 705. The court acknowledged that it had previously modified forum non conveniens dismissals to include protective conditions, including a limitations waiver, and cited *Leon* among those decisions. *Id.* But it distinguished those cases because "the defendants had previously agreed to such conditions (Aviation One; Leon), or there was no forum-selection clause involved (King)." *Id.*

The court then explained the significance of enforcing a valid forum-selection clause, where under *Atlantic Marine*, a court gives no weight to the plaintiff's choice of forum or the parties' private interests when deciding whether to enforce the clause. *Id.* The court further relied on *Atlantic Marine*'s observation that there is "no injustice" to a plaintiff who, after violating a contractual obligation by filing somewhere other than the selected forum, ultimately "loses out completely through the running of the statute of limitations." *Id.* (quotation omitted) (cleaned up). Because Hisey's claims were not time-barred when the defendants moved to dismiss, but he nevertheless insisted on litigating in Florida, the Eleventh Circuit found no "basis to modify the district court's order of dismissal" to require the requested waiver. *Id.*

Those decisions support incorporation of Celebrity's existing representations, but not the additional substantive-law stipulation Plaintiff seeks. Like the defendants in *Leon*, Celebrity has



HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

voluntarily made specific representations concerning the ability of Plaintiff to proceed in the agreed forum. Celebrity does not oppose memorializing those representations as conditions of dismissal. *See Leon*, 251 F.3d at 1316. Celebrity likewise does not oppose a provision permitting reinstatement of this action if the courts of England and Wales ultimately decline jurisdiction notwithstanding Celebrity's consent. Such a provision is consistent with the jurisdictional safeguard employed in *Leon*, while recognizing that this case, unlike *Leon*, involves enforcement of a contractually selected forum under the modified framework addressed in *Atlantic Marine* and *Hisey*.

Plaintiff's further request for "a stipulation as to the applicability or inapplicability of the limitation regimes identified in Section 12.d of the Ticket Contract," Objections ¶ 30, stands on materially different footing. Celebrity has never made such a stipulation. It therefore is not analogous to the conditions incorporated in *Leon*, which, as *Hisey* specifically recognized, were conditions to which the defendants had "previously agreed." *Hisey*, 753 F. App'x at 705. Nor does *Hisey* support requiring a defendant enforcing a valid forum-selection clause to undertake an additional concession as a condition of dismissal. To the contrary, *Hisey* declined to impose an additional protective condition in that setting even though the requested condition concerned a limitations defense that could ultimately bar the plaintiff's claims. *Id.*

The requested Section 12(d) stipulation is also unnecessary to establish that Plaintiff has a remedy in England and Wales. As addressed in response to Objection Three, Celebrity's English-law evidence establishes that Plaintiff's claims "could be brought pursuant to English law in the courts of England and Wales under the tort of negligence" and that, if she establishes the elements of negligence, she "would in principle be entitled to recover damages including pecuniary and non-pecuniary damages, to be assessed in accordance with English law principles." ECF No. 11-9 ¶¶ 24–25. That evidence does not establish, and Celebrity does not contend, that Plaintiff's recovery necessarily would be uncapped. Rather, the relevant point is that the record establishes an available negligence cause of action and damages remedy in the contractually selected forum.

Whether Section 12(d), the Athens Convention, EU Regulation 392/2009, or some other principle ultimately affects the measure of Plaintiff's recovery is a separate question of substantive law. Plaintiff herself characterizes the applicability of those liability regimes as uncertain. Objections ¶ 21. As explained in response to Objection Three, that uncertainty does not establish that England and Wales would deprive Plaintiff of a remedy. Requiring Celebrity to stipulate


HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

prospectively to the applicability or inapplicability of a substantive liability regime is therefore neither necessary to ensure the availability of the selected forum nor supported by *Leon* or *Hisey*.

Accordingly, Celebrity does not oppose an order incorporating the representations it has already made concerning service, jurisdiction, venue, Plaintiff's ability to request remote proceedings and the remote presentation of fact and expert evidence, as applicable, and its agreement to waive any statute-of-limitations defense available to it, *provided* Plaintiff refiles the action in the courts of England and Wales within six months of an order granting dismissal. Celebrity likewise does not oppose a provision permitting reinstatement if the courts of England and Wales ultimately decline jurisdiction notwithstanding Celebrity's consent. Those protections memorialize Celebrity's existing undertakings and provide assurance that Plaintiff can proceed in the contractually selected forum. Plaintiff's additional request that Celebrity be required to stipulate prospectively to the applicability or inapplicability of substantive liability limitations under Section 12(d), however, goes beyond any representation Celebrity has made and is neither required by *Leon* nor supported by *Hisey*. The Court should decline to impose that additional condition.

## **CONCLUSION**

For the foregoing reasons, Defendant CELEBRITY CRUISES, INC. respectfully requests that this Honorable Court overrule Plaintiff's Objections One through Four, adopt the Amended Report and Recommendation, and dismiss this action without prejudice. Celebrity does not oppose incorporation of its existing representations concerning jurisdiction, venue, remote proceedings, and waiver of any statute-of-limitations defense provided Plaintiff refiles in England and Wales within six months of the dismissal order, or a provision permitting reinstatement if the English courts ultimately decline jurisdiction. Celebrity respectfully requests that Objection Five otherwise be overruled, including Plaintiff's request for a stipulation concerning Section 12(d).

Respectfully Submitted,

***/s/ Douglas K. Scheller***
Jerry D. Hamilton, Esq.
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
William F. Clair, Esq.
Florida Bar No.: 693741
wclair@hamiltonmillerlaw.com

Douglas K. Scheller, Esq.
Florida Bar No.: 1047851
dscheller@hamiltonmillerlaw.com
**HAMILTON, MILLER & BIRTHISEL, LLP**
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 11, 2026 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/***Douglas K. Scheller***
Douglas K. Scheller

## SERVICE LIST

| | |
|---|---|
| Phillip M. Gerson, Esq.<br>Florida Bar No. 127290<br>pgerson@gslawusa.com<br>filing@gslawusa.com<br>Nicholas I. Gerson, Esq.<br>Florida Bar No. 0020899<br>ngerson@gslawusa.com<br>Edward S. Schwartz, Esq.<br>Florida Bar No. 346721<br>eschwartz@gslawusa.com<br>David Markel, Esq.<br>Florida Bar No. 78306<br>dmarkel@gslawusa.com<br>Lee A. Watson, Esq.<br>Florida Bar No. 356750<br>lwatson@gslawusa.com<br>**GERSON & SCHWARTZ, P.A.**<br>1980 Coral Way<br>Miami, FL 33145-2624<br>Telephone: (305) 371-6000<br>Facsimile: (305) 371-5749<br>***Attorney for Plaintiff*** | Jerry D. Hamilton<br>Florida Bar No. 970700<br>jhamilton@hamiltonmillerlaw.com<br>William F. Clair, Esq.<br>Florida Bar No.: 693741<br>wclair@hamiltonmillerlaw.com<br>Douglas K. Scheller, Esq.<br>Florida Bar No.: 1047851<br>dscheller@hamiltonmillerlaw.com<br>**HAMILTON, MILLER & BIRTHISEL, LLP**<br>150 Southeast Second Avenue,<br>Suite 1200<br>Miami, Florida 33131<br>Telephone: (305) 379-3686<br>Facsimile: (305) 379-3690<br>***Attorneys for Defendant*** |